SWEENEY & JAMES CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 10266, 19783.  Promulgated February 23, 1928.

*Everet L. Bono, Esq.*, and *Challen B. Ellis, Esq.*, for the petitioner.
*John F. Greaney, Esq.*, for the respondent.

OPINION.

SIEFKIN: The question arising in this case is whether the petitioner was a personal service corporation in 1920 and 1921. Petitioner contends that if it was not a personal service corporation, a deficiency in tax should have been calculated for the year 1920 under sections 327 and 328 of the Revenue Act of 1918 instead of under section 302 of the said Act. The sections of the Revenue Acts of 1918 and 1921 pertinent to the case are 200, 231 (14), 218 (e), and 304 (a).

The evidence in the case discloses that in 1920 and 1921 John F. Sweeney and Frank G. James, who did all the responsible work, owned all of the stock in the corporation except three shares which were issued to qualify a sufficient number of directors. Capital in the amount of $30,000 was invested in the business at its inception, but this was later invested in certificates and bonds. The capital used in the business was spent for office equipment, help, and in other ways incidental to the conduct of the business. The petitioner acted as advertising agent for its clients, reserving space in publications for advertisements in the name of the client and in other similar ways attended to the advertising of its clients' products. Bills for advertising were rendered to petitioner for the clients and petitioner paid such bills after receiving payment from the clients of the amount the publisher or other concern charged. Petitioner's income was derived from the commissions allowed by publishers and other concerns who rendered service to petitioner's clients. The principal client of petitioner, the Jordan Motor Co., did business with the petitioner because of the qualifications of James and Sweeney, and its confidence in them as individuals.

The net profits were $34,731.41 for 1920, and $28,468.71 for 1921, which were derived almost entirely from commissions on advertising. Most of the capital paid in was found to be unnecessary in the business and was invested in certificates and bonds. We, therefore, find that capital was not a material income-producing factor in petitioner's business.

The facts in this case closely parallel those in *Fuller & Smith* v. *Routzahn*, 23 Fed. (2d) 959. In that case the plaintiff was a general advertising agency. Services rendered consisted in counseling and advising clients in connection with advertising their services and products. Such counsel was given only after diligent and thorough study of the production and services its clients have to sell. The study was directed to an investigation of the market, an analysis of

all factors of distribution, a survey of all advertising media, and costs of such advertising, a retainer fee was usually agreed upon in advance, some of the principal stockholders of the plaintiff were employed elsewhere, but gave their services to the plaintiff. The plaintiff had capital stock outstanding of the value of $115,000 in 1919, but did not need and did not actually use in its business more than a third of this amount. Its earnings from personal services rendered account for 99.24 per cent of its total income and only .76 per cent is attributable to invested capital and other sources. Nor did the plaintiff buy and sell or otherwise trade in advertising space. The discount allowed by the publisher to the advertising agent, and the discount for cash payment made up substantially the plaintiff's entire income. In practice the plaintiff arranged its due dates with its clients in time to get in their money before the publisher's bills had to be paid. In only one instance during the period in question did any of the plaintiff's clients fail to pay on time. The plaintiff's business success was not due to the presence of capital or to its financial rating, but to its standing in the advertising world on which its business success was based due to the prestige of Smith and other principal stockholders. The plaintiff had many employees and small stockholders to whom were paid large salaries, but all but one of them were engaged in purely clerical or minor duties.

The court said:

The question is, I think, not one of exemption from taxation, or even of exemption from the general provisions of law otherwise applicable, but is, within which set of taxing provisions a taxpayer falls.

It was held in the case cited that the principal stockholders were regularly engaged in the conduct of its affairs of the corporation; that the plaintiff's capital was not a material income-producing factor; that the plaintiff's income was to be ascribed primarily to the activities of its principal owners or stockholders, and that, therefore, the corporation was entitled to be classified as a personal service corporation.

We have also held to the same effect in *S. A. Conover Co.*, 6 B. T. A. 679. In that case the petitioner was a corporation engaged in the advertising business. Conover held practically all the stock although 60 shares were issued to others and all the stockholders were actively engaged in the business. The only employee of the company was a stenographer-bookkeeper. Its business was obtained mainly because of Conover's familiarity with the advertising business. Petitioner made studies of the market, salability and other factors in the sale of the product of its clients and made recommendations as to the best method to employ. A service fee of $100 per month was charged

and 15 per cent of the gross charges which were billed to the client. Petitioner paid the publishers and others rendering services for the clients usually after clients had paid petitioner but frequently payment was made by petitioner before clients paid. Petitioner paid an average of $5,000 per month to publishers prior to payment to petitioner by client. Other expenses incurred and paid on behalf of clients would increase the above figure considerably.

In holding the Conover Company to be a personal service corporation, we said:

The only thing that the corporation had to sell was the service and advice of its stockholders and under the circumstances there can be no doubt that the income is to be ascribed primarily to their activities. * * * It is not sufficient to defeat personal service classification that capital be used in the business or that capital be incidental to the production of the income.

In *Massengale Advertising Agency*, 2 B. T. A. 26, on facts substantially the same as in the case at bar, the corporation was held to be a personal service corporation. See also *Botsford–Constantine & Tyler*, 10 B. T. A. 565.

In view of the facts sets forth above, we must find that the petitioner is a personal service corporation within the meaning of the Revenue Acts of 1918 and 1921.

Reviewed by the Board.

*Judgment will be entered for the petitioner.*