MITCHELL ADVERTISING AGENCY, INC., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 10351.   Promulgated March 12, 1928.

*Arnold L. Guesmer, Esq.*, for the petitioner.
*J. Harry Byrne, Esq.*, for the respondent.

1314

OPINION.

SMITH: The question presented is whether the petitioner is a personal service corporation within the meaning of section 200 of the Revenue Act of 1918, for the year 1920. In order to qualify as a personal service corporation a corporation must meet three tests: (1) The income of the corporation must be ascribed primarily to the activities of the principal owners or stockholders; (2) such principal owners or stockholders must themselves be regularly engaged in the active conduct of the affairs of the corporation; and (3) capital, whether invested or borrowed, must not be a material income-pro-

ducing factor. A failure to comply with any one of these requirements is fatal to a claim for personal service corporation classification. *Home Insurance Agency*, 5 B. T. A. 1020; *Matteson Co.* v. *Willcuts*, 12 Fed. (2d) 447. No question is raised by the respondent but that the petitioner meets the other requirements of a personal service corporation contained in the definition thereof.

In considering the question of the classification of corporations as personal service corporations or corporations subject to tax under the other provisions of the taxing statute, it becomes pertinent to inquire into the connotation of the term " personal service corporation " as used in the statute. In this connection it is important to note that the personal service corporation came into being under the provisions of the Revenue Act of 1918, which imposed a high excess-profits tax, and that it dropped out of the purview of the taxing act with the year 1921, which was the last year in which an excess-profits tax was imposed. The idea of Congress was apparently that the excess-profits tax should apply primarily to corporations which had a considerable amount of capital; in such case the exemption allowed such corporation of a reasonable return upon the amount of capital invested would not make the tax burdensome, for the tax was only a portion of the earnings in excess of a reasonable return upon the capital invested. Where, however, a corporation had little or no capital, as was generally the case where the income was to be ascribed largely to the activities of the principal stockholders, the high rates of the excess-profits tax would make the tax peculiarly burdensome to the corporation. That this was the idea in the mind of Congress is evident from a consideration of the reports of the committees of Congress which had the Revenue Act of 1918 in charge. Senator Simmons, in reporting that the Conference Committee had put into the 1918 Act section 200 of that Act, addressed the Senate as follows:

Mr. President, the Senate made a very striking amendment to the House bill in its amendment permitting a corporation whose principal income is derived from the personal activities of the principal stockholders to be taxed as a partnership instead of as a corporation. The fundamental reason for that change is found in the fact that the excess profits taxes and the war profits taxes for 1918 would be extremely oppressive—I might use a harsher term than that—would be almost destructive if they were imposed without allowing a reasonable exemption or deduction.

This exemption or deduction is based very largely upon the invested capital. With a deduction which for excess profits tax cannot be less than 8% of the invested capital, and for war profits tax cannot be less than 10% of the invested capital—with this allowance entirely exempt from taxation—a capitalistic corporation is by the very letter of law guaranteed a reasonable profit, however high the tax may be upon that part of their profits in excess of this allowance, so that no concern whose business is based upon capital, whose profits

are the returns of capital, can be bankrupted or can be deprived of what in the business world is regarded as a fair return upon the capital invested in the business. But where the income is not derived from capital, but is derived from the personal exertions of the principal owners of the corporation, there can be no exemption based upon invested capital. If these excess profits and war profits taxes were imposed, therefore, upon a corporation that had no capital or very little capital, they would constitute a flat tax upon the entire earnings, without any deductions except for the actual expenses incurred in the conduct of the business. That would be a great hardship. (57 Cong. Rec., Pt. 3, p. 3135.)

The application of section 200 of the Revenue Acts of 1918 and 1921 to an advertising agency has been considered at length in *S. A. Conover Co.*, 6 B. T. A. 679; *Fuller & Smith* v. *Routzahn*, 23 Fed. (2d) 959; *Sweeney & James Co.*, 10 B. T. A. 966; and *Botsford-Constantine & Tyler*, 10 B. T. A. 565.

A careful consideration of the evidence in this case, together with that involving the same taxpayer for the years 1918 and 1919, 3 B. T. A. 1095, leads to the conclusion that the income of the corporation for 1920, must be ascribed primarily to the activities of the principal owners or stockholders and that such principal owners or stockholders were regularly engaged in the active conduct of the affairs of the corporation. The petitioner had nothing to sell to its clients except its services. These services were principally rendered by the stockholders. It was for these services that the commissions were allowed the petitioner. See *S. A. Conover Co.*, *supra*.

As to whether capital was a material income-producing factor, the witnesses for the petitioner were unanimous in the expression of an opinion that capital was not an essential of the ordinary advertising agency or of the petitioner in particular. Advertising agencies do not make a practice of financing advertisers. Reputable publishers do not favor such practice. In the instant case the petitioner did accept from a number of its clients interest-bearing notes payable within from 60 to 90 days which it deposited in the bank the same as a check and was charged no discount thereon. These notes were paid when due, with the exception of four small notes during the year 1920, the total of which was less than $1,100. One of these clients testified that the notes were given in ordinary course of business; that the client would undoubtedly have continued with the petitioner if it had insisted upon receiving a check, for the client in such case could have had its own note discounted at its own bank. In *S. A. Conover Co.*, *supra*, we stated:

* * * It is not sufficient to defeat personal service classification that capital be used in the business or that capital be incidental to the production of the income. The capital must be a material factor in producing income. Capital must be of such use that the production of income would be materially lessened without it.

To the same effect is the language of the court in *Fuller & Smith* v. *Routzahn, supra.* There the court stated:

\* \* \* It is further said that plaintiff's capital gave it a financial standing and entitled it to a commercial rating. This is probably true. Yet the evidence is convincing that plaintiff's business success was not due to the presence of capital, or to its financial rating, but that its standing in the advertising world, on which its business success was based, was due to the prestige of Smith and other principal stockholders. Clients sought plaintiff's services because of that professional standing and reputation, and not because of the financial rating of plaintiff.

It can not be denied that a small amount of the income of the petitioner was ascribable to capital. But this income was only about $600 in the aggregate. In the circumstances, we are of the opinion that capital was not a material income-producing factor. We are, therefore, of the opinion that petitioner was a personal service corporation during the year 1920.

*Judgment will be entered for the petitioner.*