J. T. CRANE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

F. R. BELL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

H. D. LITAKER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 27271–27273.  Promulgated May 9, 1930.

*David C. Howard, Esq.*, for the petitioners.
*J. E. Mather, Esq.*, and *J. A. Lyons, Esq.*, for the respondent.

884

OPINION.

PHILLIPS: The decision of the various contentions to the effect that section 280 of the Revenue Act of 1926 as amended by the Revenue Act of 1928 is unconstitutional is controlled by our decision in *Henry Cappellini*, 14 B. T. A. 1269.

The deficiencies determined against the corporation arise solely from the fact that respondent has determined it was not a personal service corporation within the meaning of section 200 (5) of the Revenue Act of 1921. This provision reads:

The term " personal service corporation " means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits, or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive.

The corporation was not a foreign corporation and none of its income arose from trading as a principal or from Government contracts; neither was any of its stock owned or controlled by any other corporation.

The record does not disclose that capital, invested or borrowed, was a material income-producing factor. It is not the presence of capital, but its use in producing income that is important. *Fuller & Smith* v. *Routzahn*, 23 Fed. (2d) 959; *Atlantic Coast Distributors* v. *Commissioner*, 33 Fed. (2d) 733. " Capital must be of such use that production of income would be materially less

without it." *S. A. Conover Co.*, 6 B. T. A. 679. See also *H. K. McCann & Co.*, 14 B. T. A. 234; *Carter, MacDonald & Miller, Inc.*, 14 B. T. A. 522. The only portion of the corporation's gross income of over $60,000 which was derived from capital was interest in the amount of $373.74. The remainder represented commissions. The fact that in December, 1921, the corporation borrowed $10,000 for 30 days does not detract from this view. This sum was borrowed not of necessity, but to accommodate the various insurance companies represented by the corporation, and served in no way to augment its income.

This brings us to the main contention of respondent, which is that the income of the corporation is not to be ascribed "to the activities of the principal * * * stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation * * *." Respondent divides the stockholders into two classes—active and inactive. He places in the first class Bell, Crane, Davis, and Litaker, and in the second class the remaining stockholders. He further insists that one can not be a manager of another business and at the same time regularly engage in the active conduct of an insurance agency. It will thus be perceived that he includes, as possessing the statutory requirements, those, and those only, who gave their whole time to the corporation, and excludes all who did not, irrespective of whether their personal services redounded to the good of the company. The requirement of section 200(5) is not that the stockholders be exclusively or continuously engaged in the active conduct of the affairs of the corporation, but that they be "regularly" so engaged. *Atlantic Coast Distributors* v. *Commissioner*, and *Fuller & Smith* v. *Routzahn*, both *supra*.

The business of soliciting insurance peculiarly involves the factor of personality—the personal touch. *Hurst, Anthony & Watkins, Inc.* v. *Heiner*, 26 Fed. (2d) 734; *Kaufman, Ltd.* v. *Commissioner*, 24 Fed. (2d) 44; *Alexander & Garrett* v. *United States*, 21 Fed. (2d) 547; *F. Merges & Co.*, 11 B. T. A. 444; *Tifft, Layer & Co.*, 12 B. T. A. 481. With the exception of the small amount of interest, the whole of the gross income of the corporation was the result of the personal service, not of its principal stockholders alone, but of all its stockholders, or of its good will, the latter being the result of their personal popularity. It is not necessary for us to decide that all the stockholders possessed the statutory requirements. It is only necessary to point out that those who gave their whole time to the affairs of the corporation owned 75 per cent of its outstanding capital stock. In addition to these, Drumheller, who owned 150 shares, with its vice president and treasurer, was in constant touch with its office advising on various matters, and during the year procured for it business which paid over $20,000 in premiums. Cabell and Beury,

who each owned 150 shares, procured insurance which paid premiums totaling nearly $48,000. It is pertinent to point out that the services performed were not merely those of permitting the corporation to write insurance on properties owned by these stockholders. They were active in soliciting insurance from others. While none of these three men gave his entire time to the service of the company, it is clear that each was actively engaged in its service.

It thus appears that the corporation fills every requirement of section 200 (5) unless Drumheller, Cabell and Beury were not "regularly" engaged in the conduct of the corporation's affairs. The word "regularly" should not be so limited in meaning as to defeat the purpose of the statute. *Bryant & Stratton Commercial School*, 1 B. T. A. 32. The main purpose of the Congress in taxing this peculiar class of corporations was to exempt from profits taxes those whose income was not materially derived from capital, but was the result of personal services on the part of the stockholders. *Mitchell Advertising Agency*, 10 B. T. A. 1311; *Fuller & Smith* v. *Routzahn, supra*. We are not prepared to say that under the facts of this proceeding, where every stockholder was a producer, the ownership of 75 per cent of the stock by the all-time stockholders was not sufficient; but when we add to these the stockholdings of Drumheller, Cabell, and Beury, each of whom apparently "regularly" produced business in large amounts, and thus bring the total shares of the "principal" stockholders up to over 86 per cent, and consider that all of the other stockholders were active in producing business, we are of the opinion that respondent erred in refusing the corporation personal service status.

*Decision will be entered for the petitioner.*