HENRY CAPPELLINI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

SERAFINO CINCI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

GUIDO FUNARI, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 25926–25928. Promulgated January 15, 1929.

*Moultrie Hitt, Esq., Clarence A. Miller, Esq., G. Kirby Munson, Esq.,* and *Willard Carlson, Esq.,* for the petitioners.

*Ellsworth C. Alvord, Esq., Clark T. Brown, Esq., M. N. Fisher, Esq., Frederic P. Lee, Esq.,* and *William Burry, Jr., Esq.,* for the respondent.

*A. S. Weill, Esq., Hugh Satterlee, Esq.,* and *A. E. Graupner, Esq.,* as *amici curiae.*

OPINION.

ARUNDELL: The facts have been stipulated and both parties have in these proceedings directed their arguments to the constitutionality of section 280 of the Revenue Act of 1926. Both parties have also urged that the Board not only has the power, but it is its duty to determine the constitutionality of that section. The position of respondent is that the section is constitutional. The petitioners contend that section 280 is unconstitutional and in their petitions assign as error the following:

(a) The action of the Commissioner of Internal Revenue in proposing to assess against this petitioner, as transferee of the assets of the Masontown Coal Company, now dissolved, the sum of $2,134.18, plus any penalty and accrued interest, representing unpaid income and profits tax assessed against that company for 1920.

(b) The action of the Commissioner of Internal Revenue in purporting to proceed under the provisions of section 280 of the Revenue Act of 1926, and proposing to assess against this petitioner the tax alleged to be due from the Masontown Coal Company, now dissolved, for the reason that said section 280 of the Revenue Act of 1926 is in conflict with the Constitution of the United States, unconstitutional and void, and the Commissioner of Internal Revenue is without authority to propose to assess said tax against this petitioner.

(c) Section 280 of the Revenue Act of 1926 is unconstitutional and void for that it violates and contravenes the provisions of the Constitution of the United States in this:

1. It confers judicial power on the Commissioner of Internal Revenue contrary to the provisions of Section 1, Article 3.

2. It deprives this petitioner of his property without due process of law, contrary to the provisions of the Fifth Amendment.

3. It makes this petitioner liable for tax upon income not received by him, contrary to the provisions of the Sixteenth Amendment.

4. The tax imposed is a direct tax, levied without apportionment, and not in income, contrary to section 2 of Article 1, and the Sixteenth Amendment.

While the assignments of error do not in terms attack the jurisdiction of the Board, an analysis of the question raised by petitioners shows that their position goes much deeper than appears on the surface and necessarily involves a consideration of the power and duties of the Board, for the reason that the section attacked is the one by which petitioners come before the Board. The assignments do not call attention to a particular part of the section which is claimed to be unconstitutional, but the charge made is that the entire system set up by the statute, which provides for a determination in the first instance

by the Commissioner and a review of that determination by the Board, is unconstitutional. The attack is on the entire system and carries with it as much a charge that the Board is without power as that the Commissioner is without power. That the petitioners are not unaware of this fact plainly appears from page 78 of their brief, wherein it is stated:

It necessarily follows, therefore, that neither the Commissioner of Internal Revenue nor the Board of Tax Appeals has the legal power to determine the liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax sought to be imposed by virtue of Section 280, and that this section is unconstitutional because of its attempt to confer upon the Commissioner of Internal Revenue, and incidentally upon the Board of Tax Appeals a part of the judicial power of the United States.

In the view we take of the matter it is not necessary to determine whether the Board, which is specifically placed in the executive branch of the Government, may pass on the constitutionality of an act of Congress, or whether in fact section 280 is or is not constitutional. It is only by invoking the provisions of section 280 that petitioners may come to the Board, for it is that section alone which gives the Board jurisdiction of these proceedings. It is a well settled principle that one can not invoke the aid of a statute conferring jurisdiction and at the same time attack the validity of the statute so invoked. This principle we believe is firmly established by the decisions of the Supreme Court.

In *Great Falls Mfg. Co.* v. *Attorney General*, 124 U. S. 581, the plaintiff, pursuant to an act of Congress, sued in the Court of Claims to recover damages for the taking of its property, and then filed a bill in the Circuit Court, alleging, *inter alia*, that the act of Congress giving the right to sue in the Court of Claims was unconstitutional on several grounds, and praying for a restraining order against the Attorney General and Secretary of War, or, if it should be found that the property had been legally condemned, that an issue be framed triable by jury to ascertain the amount of damages. The Supreme Court said (at p. 589):

It is, however, contended that the act is, in all of its parts, unconstitutional and void. The grounds upon which the plaintiff rests this contention are: that the act makes no provision by which compensation for property taken under it can be constitutionally adjusted and determined; that it does not provide for the ascertainment of such compensation by the verdict of a jury; that it compels the plaintiff to have recourse to the Court of Claims, which is a court unknown to the Constitution, being neither a court of equity such as was known at the adoption of that instrument, nor a court of law proceeding according to the rules of common law, but only a board of referees, constituted by one party to hear such cases as another party will consent to submit to its determination, and without power to enforce its judgment against the party by whom it is created; and that it directs property to be taken and the owner thereof dispossessed, without making provision for just compensation.

These are questions of much interest, and their examination, in the light of the authorities, might not be altogether unprofitable. But this opinion need not be extended for the purpose of such an examination; for the questions propounded are not material in the determination of the present case. They have become immaterial by the act of the plaintiff in instituting suit against the United States in the Court of Claims. In that suit compensation was sought for its property taken for public use, while the present suit proceeds upon the ground that it has not been lawfully taken, and that it is entitled to be placed in possession thereof. Congress prescribed a particular mode for ascertaining the compensation which claimants of property taken for the purposes indicated in the act of 1882 were entitled to receive. It gave them liberty to proceed by suit against the United States before a designated tribunal, which, since the passage of the act of March 17, 1866, 14 Stat. 9, has exercised " all the functions of a court," from whose judgment appeals regularly lie to this court. *United States* v. *Klein*, 13 Wall. 145; *United States* v. *Jones*, 119 U. S. 477; *Gordon* v. *United States*, 117 U. S. 697. The plaintiff, by adopting that mode, has assented to the taking of its property by the Government for public uses, and has agreed to submit the determination of the question of compensation to the tribunal named by Congress. By the very act of suing in the Court of Claims, under the statute of 1882, it has not only waived the right, if such right it had, to compensation in advance of the taking of its property, but the right, if such it had, to demand that the amount of compensation be determined by a jury.

To the same effect are *Daniels* v. *Tearney*, 102 U. S. 415; *Electric Co.* v. *Dow*, 166 U. S. 489; *Grand Rapids & Indiana Ry. Co.* v. *Osborn*, 193 U. S. 17; *Merchants Heat & L. Co.* v. *Clow & Sons*, 204 U. S. 286; *Wall* v. *Parrot Silver & Copper Co.*, 244 U. S. 407; *Booth Fisheries* v. *Industrial Commission*, 271 U. S. 208; and *Hirsh* v. *Block* (App. D. C.), 267 Fed. 614.

In *Merchants Heat & L. Co.* v. *Clow & Sons*, *supra*, the defendant was sued in the United States Circuit Court. A motion to quash the return of service was overruled, to which exception was taken, and thereafter defendant appeared, pleaded the general issue, and also set up a counterclaim on the contract on which it was being sued. The case went to the Supreme Court on the question of jurisdiction of the Circuit Court. The Supreme Court said in its opinion:

We assume that the defendant lost no rights by pleading to the merits, as required, after saving its rights. *Harkness* v. *Hyde*, 98 U. S. 476; *Southern Pacific Co.* v. *Denton*, 146 U. S. 202. But *by setting up its counterclaim the defendant became a plaintiff in its turn, invoked the jurisdiction of the court in the same action and by invoking submitted to it.*

\* \* \* \* \* \* \*

There is some difference of opinion in the decisions as to when a defendant becomes so far an actor as to submit to the jurisdiction, but we are aware of none as to the proposition that when he does become an actor in a proper sense he submits. *De Lima* v. *Bidwell*, 182 U. S. 1, 174; *Fisher* v. *Shropshire*, 147 U. S. 133, 145; *Farmer* v. *National Life Association*, 138 N. Y. 265, 270. (Italics ours.)

The case of *Hirsh* v. *Block*, *supra*, involved the so-called Ball Rent Law (41 Stat. 298), which provided a procedure for the eviction of

tenants resident in the District of Columbia by giving notice to the tenant, referring disputes to the Rent Commission, thence by appeal to the Court of Appeals of the District of Columbia. Hirsh, believing the Act unconstitutional, did not follow the procedure thereby established, but instituted a landlord and tenant proceeding in the municipal court. The opinion of the Court of Appeals reads, in part:

The right of plaintiff to question the constitutionality of the act in this proceeding is assailed. It is urged that he should have pursued the remedy prescribed in the act, and, if unsuccessful, appeal. But plaintiff would be in poor position to question the jurisdiction which he had himself invoked, merely because of an adverse decision. If he should invoke the aid of the statute, and suffer defeat before the commission, he would estop himself to seek further relief on the ground of the unconstitutionality of the act. He would not be permitted to thus experiment with the law. *Electric Co.* v. *Dow,* 166 U. S. 489, 17 Sup. Ct. 645, 41 L. Ed. 1088; *Wight* v. *Davidson,* 181 U. S. 371, 21 Sup. Ct. 616, 45 L. Ed. 900; *Shepard* v. *Barron,* 194 U. S. 553, 24 Sup. Ct. 737, 48 L. Ed. 1115; *Daniels* v. *Tearney,* 102 U. S. 415, 26 L. Ed. 187; *Grand Rapids, etc. Ry. Co.* v. *Osborn,* 193 U. S. 17, 24 Sup. Ct. 310, 48 L. Ed. 598.

The decision of the Court of Appeals was reversed by the Supreme Court (256 U. S. 135) solely on the question of the constitutionality of the Act.

The case of *In re Fassett,* 142 U. S. 479, was a petition by the collector of customs for a writ of prohibition against the judge of the United States District Court. Under process issued by that court the marshal had taken into his custody a vessel theretofore seized by the collector for customs duties. Under the customs law then in force the decision of the collector as to " the rate and amount " of duties was final unless the importer objected, in which event the case was referred to a board of three general appraisers. The decision of the board was to be final except where an application for review of the questions of fact and law was filed in the United States Circuit Court.

The question was whether a libel by the owner of the vessel would lie to recover it from the collector of customs. The Supreme Court held that it would, on the ground that, had the importer proceeded by appeal to the appraisers and to the Circuit Court he would have been estopped to raise the fundamental question of whether the article in fact was imported. The language of the court is:

Nor can the court of review pass upon any question which the collector had not original authority to determine. The collector had no authority to make any determination regarding any article which is not imported merchandise; and if the vessel in question here is not imported merchandise, the court of review would have no jurisdiction to determine any matter regarding that question, and could not determine the very fact which is in issue under the libel in the District Court, on which the rights of the libellant depend.

Under the Customs Administration Act, the libellant, in order to have the benefit of proceedings thereunder, must concede that the vessel is imported

merchandise, which is the very question put in contention under the libel, and must make entry of her as imported merchandise, with an invoice and a consular certificate to that effect, and thus estop himself from maintaining the fact which he alleges in his libel, that she is not imported merchandise.

*In re Fassett, supra*, was cited with approval and discussed at length by the Supreme Court in *De Lima* v. *Bidwell*, 182 U. S. 1, 175.

The latest pronouncement that we find on this principle by the Supreme Court is in *Booth Fisheries* v. *Industrial Commission*, *supra*, decided May 24, 1926, in which the court not only adhered to the rule announced in the case above, but somewhat extended it and applied it to facts closely analogous to those before us. That case involved the Wisconsin Compensation Act, which was not obligatory but gave employers the right to elect to become subject to it. Failing to so elect, an employer was not bound to respond in a proceeding before the Industrial Commission, but might await a suit for damages for injuries or wrongful death and make his defense at law before a court and jury. The Supreme Court held:

In view of such an opportunity for choice, the employer who elects to accept the law may not complain that, in the plan for assessing the employer's compensation for injury sustained, there is no particular form of judicial review. This is clearly settled by the decision of this Court in *Hawkins* v. *Bleakly*, 243 U. S. 210, 216.

More than this, the employer in this case having elected to accept the provisions of the law, and such benefits and immunities as it gives, may not escape its burdens by asserting that it is unconstitutional. The election is a waiver and estops such complaint. *Daniels* v. *Tearney*, 102 U. S. 415; *Grand Rapids & I. R. Co.* v. *Osborn*, 193 U. S. 17.

The rule as expressed in the above cases is, we believe, the proper one to be applied in these proceedings. From the authorities cited and quoted it appears to be the settled rule as laid down by the Supreme Court that one who invokes jurisdiction submits to it, and having submitted to it, waives all right to interpose any objection. It seems to be equally well established that one can not take advantage of a statute and then question its constitutionality. This rule has particular force where one has an election of remedies as in the instant proceedings. The petitioners were not required to appeal to the Board for an adjudication of the dispute between them and the respondent. Their action in so doing was entirely voluntary. It was not the only course open to them. That this is true clearly appears from the Conference Report on the Revenue Bill of 1926 (69th Cong., 1st sess., Rept. No. 356), wherein it is stated (p. 43):

Without in any way changing the extent of such liability of the transferee under existing law, the amendment enforces such liability (whether in respect of the tax as originally returned by the taxpayer or a deficiency therein) in the same manner as liability for a tax deficiency is enforced; that is, notice

by the Commissioner to the transferee and opportunity either to pay and sue for refund or else to proceed before the Board of Tax Appeals, with review by the courts.

It has been suggested by way of argument that the Board is the only forum in which petitioners may obtain a determination of the question of the constitutionality of section 280. We know of no reason why a transferee may not refrain from proceeding before the Board, pay the amount demanded and seek redress by a suit for refund, and in that proceeding question the constitutionality of section 280.

It is argued, however, that it is necessary for us to determine our jurisdiction, the presumption being at all stages against it in bodies of limited jurisdiction, and to do this we must determine the validity of section 280. This argument is probably based on the theory that if section 280 is invalid any steps that may be taken under it would be null and void. We can agree that it is our duty in every case to determine whether it comes within our jurisdiction, and if it does not, to so declare even if the question is not raised by the parties. We have so held ever since the decision in *Frost Superior Fence Co.*, 1 B. T. A. 1096. See also *Southern California Loan Association*, 4 B. T. A. 223, and cases there cited. But this determination, in our opinion, does not require an examination into the validity of the law which the parties invoke as the means of coming before us. We do not find that the courts have gone further than to determine jurisdictional facts, such as diversity of citizenship (*Grace* v. *American Central Ins. Co.*, 109 U. S. 278), the amount in controversy (*Washer* v. *Bullitt County*, 110 U. S. 558), or the subject matter of the controversy (*Ex parte Smith*, 94 U. S. 455), and we have not been referred to any cases wherein a court will look to the validity of the law under which the parties come before it to determine its jurisdiction. If a court must question the validity of the law giving it jurisdiction in all circumstances, there would be no point to the decisions holding a plaintiff may not question the jurisdiction he had invoked, for the court would be required to raise the question on its own motion. All acts of Congress are presumed to be constitutional. On the pleadings in these cases we quite plainly have jurisdiction. The jurisdictional allegations in the petitions are clear and specific and are admitted by the respondent. There is nothing on the face of the pleadings or in the stipulated facts which would cause inquiry into our jurisdiction, and we think it unnecessary to go beyond these to search for any right to take jurisdiction. But, it is argued, if section 280 violates constitutional rights and it is our duty to declare in favor of the supreme law, the Constitution, and if the section is unconstitutional, any steps that we take under it are void. It is a sufficient answer that constitutional rights may

be waived (*Pierce* v. *Somerset Railway*, 171 U. S. 641, 648; *Kearney* v. *Case*, 12 Wall. 275, 281; *Bank of Columbia* v. *Olney*, 4 Wheat. 235), and if any constitutional rights of petitioners are violated by section 280 they have waived them by initiating the proceeding permitted by that section.

It is no longer open to question that transferees of corporate assets, other than bona fide creditors or purchasers, take the assets charged with a trust in favor of creditors. *Wood* v. *Dummer*, 3 Mason, 308; Fed. Case No. 17944; *Curran* v. *Arkansas*, 15 How. 304, 307. It also seems to be settled that in transferee cases a money judgment may be obtained, even under some circumstances where the distribution is of property other than money, but the transferee can not be called upon to respond in any amount greater than the portion he has received. *McWilliams* v. *Excelsior Coal Co.*, 298 Fed. 884, 886. *United States* v. *Garbutt*, 27 Fed. (2d) 1000.

There remain only the questions of whether all stockholder-transferees must be made parties, and the extent of the liability. In the case of *Ogilvie* v. *Knox Insurance Co.*, 20 How. 308, a creditors' bill was brought to compel subscribers to the capital stock of the corporation to pay their subscriptions and to satisfy the judgment against the corporation out of the sum so paid. Upon the objection that the bill was defective for want of proper parties, the court held:

The creditors of the corporation are seeking satisfaction out of the assets of the company to which the defendants are debtors. *If the debts attached are sufficient to pay their demands, the creditors need look no further.* They are not bound to settle up all the affairs of this corporation, and the equities between its various stockholders, corporators, or debtors. If A is bound to pay his debts to the corporation in order to satisfy its creditors, he cannot defend himself by pleading that these complainants might have got their satisfaction out of B as well. (Italics ours.)

In *Hatch* v. *Dana*, 101 U. S. 204, the court quotes from *Marsh* v. *Burroughs*, 1 Woods 468, as follows:

If a creditor were to be stayed until all such parties could be made to contribute their proportionate share of the liability, he might never get his money.

In *Wood* v. *Dummer*, *supra*, it is said:

The general rule is, that all persons materially interested, either as plaintiffs or defendants, are to be made parties. There are exceptions, just as old and well founded, as the rule itself. Where the parties are beyond the jurisdiction, or are so numerous, that it is impossible to join them all, a court of chancery will make such a decree, as it can, without them.

These cases satisfy us that it is not necessary in this case to bring all the transferees before the Board, but that the Commissioner may proceed, as he has done, against any one or more.

1278

However, since the arguments and briefs in these proceedings were directed almost entirely to the constitutionality of section 280 and the right of the Board to entertain and determine that question, and dealt but slightly with 'the question of the extent of the liability of transferees, that is, whether each is liable for the full amount of the transferor's liability or only for a pro rata share, we deem it but fair that an opportunity be afforded the parties to argue and brief this question. To that end the cases will be set down for further argument at a convenient date.

Reviewed by the Board.

STERNHAGEN, concurring: It seems to me that the idea preventing petitioner from attacking the system which he invokes is not to be restricted by the standards of estoppel, waiver, or jurisdiction, but is rather a rule which has been recognized by the Supreme Court for its own sake. If *Great Falls* v. *Attorney General*, 124 U. S. 581; *Daniels* v. *Tearney*, 102 U. S. 415; *Grand Rapids* v. *Osborn*, 193 U. S. 17; *Wall* v. *Parrot*, 244 U. S. 407, were alone on the subject, they might be distinguished by elements of equitable estoppel which are not present here. But as the principle was applied in the *Booth Fisheries* case, 271 U. S. 208, it became broader than one of ordinary estoppel. When the court said in *In re Fassett*, 142 U. S. 479, that, had the petitioner proceeded before the Board of General Appraisers under the Customs Administrative Act of 1890, he would have submitted to the authority of the Board and thus admitted the very proposition he sought to litigate, it was laying down a rule upon which its ultimate decision was made largely to depend. In *De Lima* v. *Bidwell*, 182 U. S. 1, 174, it stood by the rule, and Mr. Justice Holmes in *Merchants Heat & Light Co.* v. *Clow & Sons*, 204 U. S. 286, took it as sufficiently general to be applicable to a question of jurisdiction founded on improper removal to a Federal court. In that case, irrespective of its possible original limits, the rule was said to be that one who as an actor invokes jurisdiction submits to it.

Thus it seems to me that, upon the commonly accepted doctrine that jurisdiction of a special tribunal can not be assumed and must always be inquired into, there has been engrafted the exception of the foregoing line of cases, the boundaries of which are yet to be clearly drawn. I think that the instant case is similar enough to those above cited to require the same treatment. This does not mean that in any case one who proceeds before the Board must forgo all constitutional questions. It may well be that he may invoke the Board to set aside a levy which the Constitution forbids, such for example as an unapportioned direct tax. But that is different from the anomaly of invoking the system or machinery provided for him and yet complaining of its existence.

That the petitioner came to the Board of his own volition and thus exercised a real election seems clear. In choosing the Board as the theatre of his contest, he saved possession of his funds until the Commissioner had, under section 602, Revenue Act of 1928, sustained the burden of proving his liability. He might, instead, have stood on his idea that the Commissioner's determination was unconstitutional, refused to pay, and sought, as did the *Owensboro Ditcher & Grader Co.* (18 Fed. (2d) 798), to arm his resistance with an injunction. If section 604, Revenue Act of 1928, were raised against him, he might have attacked its validity. Failing that, (as in *Felland* v. *Wilkinson*, decided November 22, 1928, U. S. Dist. Ct., W. Dist. Wis.) he might still pay the Commissioner's demand under protest, allege duress, and sue at law for recovery, setting up his points of unconstitutionality. This was, in my opinion, a substantial election, and he must be required to accept the limitations of the course he has chosen. He must submit to the Board the issue of his liability as a transferee and its measure, the burden of proof being on respondent and both parties having the aid of the proper powers of the Board through subpoena or otherwise to secure the available evidence.

It may be that, either because of the limited powers of the Board or because of the limited powers of the parties, practical or legal, the disposition will fall short of what some of my colleagues regard as complete or perfect justice. Perhaps it is less roundly efficient and final than some would desire. But this seems to me to go to the wisdom of the legislation, or to the wisdom of a transferee in choosing to come to the Board. Even courts of equity are not instruments of perfection. They only strive for justice within the limits of their powers. If interested persons or some of the subject matter are beyond the reach of their jurisdiction, they may act on what they have. Here the Board must do likewise, and the petitioner is fortunate enough to escape the burden of proof. I take it that the difficulties which may be encountered in the administration of the statutory method are alone no test of its validity and do not improve the standing of the petitioner to raise the question. A statute is not unconstitutional because it is hard to apply. But in this case the facts are all stipulated, and whatever difficulty there is rests in finding and applying the law—a problem which inheres, in one form or another, in all our cases. Whatever may be the weaknesses of the Board's equipment under the statute, it must use it as best it can, and the petitioner, having chosen it, must abide by the consequences of his choice.

But it is urged that this imposes upon the Board a power to determine liability at law or in equity and so bestows judicial power

upon the executive in contravention of the Constitution. To this there are several answers. That the petitioner can not be heard to raise the question has already been demonstrated by one line of reason and authority. In addition to this, it may be asked wherein his constitutional rights are invaded so as to give him a token of right to complain? Such judicial function as the Board exercises is at petitioner's instigation, and represents not an enforced substitute for the courts, but an elective supplement. No hearing is denied him in a court of first instance unless he chooses to have it so; and even then, after having exercised his right to a full hearing before the Board, he may have a judicial review in the Circuit Court of Appeals. All this, before anything is taken from him to pay what seems to be a clear liability to some extent. As to him the question whether judicial power has been unlawfully bestowed on the executive is academic, and he has no right to raise it here. See *United Fuel Gas Co.* v. *Kentucky*, 278 U. S. 300.

Furthermore, it seems to me that petitioner has due process of law, when under the statute he has a choice of proceeding either in court or in the Board, and when, before the Board, he has notice and opportunity to be heard with judicial review before anything is taken from him. This is especially so when the procedure set up and of which he avails himself is incidental to the taxing power. To say that the amount is not a "tax" stops short of the essence. It is clearly an amount which the Government claims as part of the revenues derived through the levy of the income tax. Congress has broad powers to prescribe the methods of collection by which its revenues shall be brought to the Treasury, and if it believed this method necessary or wise to prevent the escape of revenue or to facilitate collection, I find nothing in the Constitution which requires the Board, at the instance of this petitioner, to say it may not prescribe it or to frustrate its use. The method is new and goes further than any previous method, but that alone does not invalidate it, and it has not been demonstrated that it goes so far as to stretch the tax-collecting power beyond constitutional limits. It is still part of the "system of corrective justice" approved in *Snyder* v. *Marks*, 109 U. S. 189.

---

MARQUETTE, concurring: I agree with the result of the prevailing opinion to the effect that the Board must proceed to determine the liability of the petitioners, but I base my conclusion upon a totally different theory.

The petitioners have come before this body raising a single issue— that of the constitutionality of section 280, and both parties insist the Board has the power to decide this issue. As I read the authori-

ties relied upon to sustain the prevailing opinion, the reasons for the decisions therein seem to me to have no application here, and I deem it the duty of the Board to meet the issue, rather than attempt to find means to evade it. The issue raised is not peculiar to this class of cases, and is one which is constantly recurring.

I am not concerned, primarily, with the question whether or not section 280 of the Revenue Act of 1926 is constitutional. It is my opinion that the Board must assume the section to be constitutional until the courts have determined it to be unconstitutional, and that the Board is without authority to pass upon such a question. It is not my intention to enter into a lengthy discussion of my reasons for such belief or to discuss authorities which I believe sustain my position, but rather to set down briefly the reasons which impel my conclusion.

Article III, section 1, of the Constitution provides, in part, as follows:

The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. * * *

It can not be contended that by the creation and continuance of the Board of Tax Appeals, the Congress created or intended to create, a court. On the contrary, that body expressly places the Board under the executive department of the Government. In *Williamsport Wire Rope Co.* v. *United States*, 277 U. S. 551, Mr. Justice Brandeis said:

The Board is an independent agency. By the specific provisions of the Revenue Act of 1924, c. 234, No. 900 (k), 43 Stat. 253, 338, it was defined as an agency in the executive branch of the government. Compare *Goldsmith* v. *Board of Tax Appeals*, 270 U. S. 117, 121–122. *Its sole function consists in reviewing on appeal, determinations of the Commissioner under the revenue laws.* (Italics supplied.)

Under our form of government, the exercise of the executive, legislative, and judicial powers is vested in separate and independent branches, and these separate branches have only the powers granted them, which may not be delegated. The Constitution provides that " all legislative power herein granted shall be vested in a congress of the United States," that " the executive power shall be vested in a president of the United States of America," and that " the judicial power of the United States shall be vested in one supreme court, and in such inferior courts as Congress may from time to time ordain and establish." In our Government as constituted, the separation of powers is not complete. Each of these departments of Government exercises powers, which, in their essential nature, would not belong to it. The general principle regarding the exer-

cise of the powers of one department by another is stated in Willoughby on the Constitution, sec. 743, as follows:

Thus it is not a correct statement of the principle of separation of powers to say that it prohibits absolutely the performance by one department of acts which, by their essential nature, belong to another. Rather, the correct statement is that a department may constitutionally exercise any power, whatever its essential nature, which has, by the Constitution, been delegated to it, but that it may not exercise powers not so constitutionally granted, which, from their essential nature, do not fall within its division of governmental functions, unless such powers are properly incidental to the performance by it of its own appropriate functions.

From the rule, as thus stated, it appears that in very many cases the propriety of its exercise of a power by a given department does not depend upon whether, in its essential nature, the power is executive, legislative, or judicial, but whether it has been specifically vested by the Constitution in that department, or whether it is properly incidental to the performance of the appropriate functions of the department into whose hands its exercise has been given.

Generally speaking, it may be said that when a power is not peculiarly and distinctly legislative, executive, or judicial, it lies within the authority of the legislature to determine where its exercise shall be vested.

The question, then, would seem to be, Where has the Constitution specifically placed this power, or, in which department is it properly incidental to the performance of the appropriate functions of that department?

We have seen that the Congress did not create the Board of Tax Appeals as an inferior court, and therefore it did not, even assuming that it had the power to do so, vest the Board as a branch of the executive department, with any of the judicial power of the United States in a constitutional sense. I take it that since the decision of Chief Justice Marshall in *Marbury* v. *Madison*, 1 Cr. 137, it has always been held that the power to declare an act of Congress unconstitutional is peculiarly and distinctly a judicial power. If, therefore, the Board is not a court and exercises no part of the judicial power of the United States in a constitutional sense, and if the power to declare a law unconstitutional is exclusively a judicial power, I am at a loss to understand from what source of power the Board could assume to decide the issue raised.

As I have stated above, I think the Board must in all cases assume a statute to be constitutional, and proceed to a determination upon that theory.

SIEFKIN agrees with this opinion.

---

PHILLIPS, concurring: The statute confers upon the Board jurisdiction to determine the existence and amount of the liability of transferees; it confers no jurisdiction to determine whether the procedure for the collection of such liability is or is not constitutional.

If the petitioners wished to test the constitutionality of this statute, they should have proceeded in a forum of more general jurisdiction. *In re Fassett*, 142 U. S. 479; *DeLima* v. *Bidwell*, 182 U. S. 1.

Nor is it proper, as the briefs of the parties suggest, that the Board should raise the question whether the provisions of this statute, which direct that it shall hear and determine certain issues, is constitutional. *Mainard* v. *Board*, 82 Mich. 228; *People* v. *Salomon*, 54 Ill., 39; *United States* v. *Marble*, 3 Mackey (D. C.), 32. See also *Clark* v. *Kansas City*, 176 U. S. 114, *Braxton County Court* v. *West Virginia*, 208 U. S. 192.

Since the constitutional question which is raised in the pleadings need not be answered in deciding the only matter of which the Board has jurisdiction, I am of the opinion that, irrespective of whether petitioners have brought themselves within the authorities relied upon in the prevailing opinion, the only issue properly before us for determination is the amount of the liability of the petitioners as transferees.

---

MILLIKEN, dissenting: This proceeding deserves and requires more than a mere notation of dissent. Approximately two thousand cases are pending on our docket which will in a large measure be controlled by this decision. By reason of the far-reaching effects of the majority view, I feel impelled to set forth my views at some length.

Petitioners are prohibited by section 604 of the Revenue Act of 1928 from bringing a suit in any court for the purpose of restraining the assessment or collection of the liabilities which respondent now seeks to enforce against them, and from which they are seeking relief in these proceedings. Cf. *Carl J. G. Felland* v. *Wilkinson*, U. S. Dist. Ct., W. Dist. Wis., Nov. 22, 1928. If petitioners had not appealed to the Board, their property, in the absence of enforced payment, would have been sold under distraint proceedings to pay the obligations of another with all the attendant hardships of such a proceeding. Their only remaining right would have been a suit to recover that which they would contend had been illegally and unconstitutionally exacted from them. Under these circumstances, the majority of the Board holds that since the right to appeal to the Board is found only in section 280, petitioners can not in these proceedings adopt that part of the section and seek to have the remaining parts held invalid. In support of this conclusion, certain cases are relied upon. A careful reading of all the cases cited in the majority opinion discloses that they rest on certain equitable principles, including election and waiver. In every one of the cases the complaining party had the free option of proceeding

in another way or before another tribunal. All these equitable doctrines are bottomed upon knowledge—knowledge of facts and of rights. But what does knowledge avail if there can be no free exercise of the right to elect or to waive? The word election connotes the " internal free and spontaneous " exercise of the right of selection. *Standard Oil Co. of Kentucky* v. *Hawkins* (C. C. A.), 74 Fed. 395. There can be no election where the only choice presented is what is known as "Hobson's choice." *New* v. *Smith*, 94 Kans. 6; 145 Pac. 880. The same is true of a waiver. In Mechem on Sales, sec. 1071, waiver is thus defined:

A waiver is a voluntary and intentional relinquishment of a known right. It implies an election by the party to dispense with something of value, or to forego some advantage which he might, at his option, have demanded or insisted upon. To constitute a waiver, therefore, the acts relied upon must have been voluntarily and intentionally done, with knowledge of the facts, and the party must have been in such a situation of freedom to choose that his relinquishment can fairly be said to be voluntary. What one does in a dilemma forced upon him by the default of the other cannot be counted upon as a waiver.

In *Warren* v. *Crane*, 50 Mich. 300; 15 N. W. 465 Judge Cooley said, with reference to a choice which had been forced upon a defendant:

Waiver is a voluntary act, and implies an election by the party to dispense with something of value, or to forego some advantage which he might at his option have demanded or insisted upon. But that action is in no sense voluntary which a party cannot decline to take except at the peril of liberty or property, as was the case here.

The above excerpt has often been cited with approval. Since the Board is the only tribunal to which petitioners could have appealed for relief, except after having suffered a property loss, it seems to me that it is a misuse, in fact an abuse, of words to hold that petitioners have made an internal, spontaneous, free and voluntary election or waiver. Their choice to appeal to the Board is quite similar to the choice of the prisoner in the old English case referred to in *United States* v. *Kirby*, 7 Wall. 482, who elected to incur the danger of the penalty of hanging for jail-breaking, rather than remain in a burning jail. The court refused to punish for the quaint reason, " For he is not to be hanged because he would not stay to be burnt." In filing these petitions before the Board petitioners have taken the only course open to them which does not first result in a loss of property.

It is to be noted in this connection that, as I will shortly point out, we are not dealing with a tax liability. Petitioners are not, in so far as these proceedings are concerned, taxpayers. The Masontown Coal Co. is the taxpayer. The liability of the transferor is partially for excess-profits taxes to which these petitioners are not made liable by the Revenue Act of 1918. The liability which the Government is seeking to enforce is not a liability for a tax but a liability in equity,

a liability which any creditor can enforce in the proper court. See H. Conf. statement, H. Res. 356, 69th Cong. Under these circumstances, I am fully persuaded that petitioners should be permitted to raise the question of the invalidity of section 280 in these proceedings.

But admitting for the sake of argument that petitioner should be denied this right, I am convinced that it is the duty of the Board to raise the question for the reason that it goes directly to the fundamental proposition whether the Board possesses jurisdiction to determine a purely equitable issue. Counsel for petitioners has also in a very clear-cut request asked the Board to determine its own jurisdiction and briefed that question for us. So that question is before us quite apart from the fact that we should raise it. If the section is unconstitutional, the result is the same as though it had never been enacted. See *Virginia Coupon Cases*, 114 U. S. 269; *Norton* v. *Shelby County*, 118 U. S. 425; and *Chicago, Indianapolis and Louisville Railroad Co.* v. *Hacket*, 228 U. S. 559. Any determination rendered by the Board under section 280, if such section carries an unconstitutional vesting of functions, would be null and void. *Ferris* v. *Higley*, 20 Wall. 375; *In re Christensen Estate*, 17 Utah 412; 53 Pac. 1003.

At every stage of the proceeding the presumption is that the Board does not possess jurisdiction. Cf. *Bors* v. *Preston*, 111 U. S. 252. It is also the duty of the Board to decline jurisdiction if it determines that section 280 seeks to impose on it functions which pertain solely to courts provided for by the Constitution. It is also the duty of the Board to raise the question of invalidity, even though that question is not raised by the pleadings or parties. See *Keller* v. *Potomac Electric Power Co.*, 261 U. S. 428, and *Minnesota* v. *Hitchcock*, 185 U. S. 373. See cases cited in *Robertson* v. *Baldwin*, 165 U. S. 275. In this view of the case, it is not necessary to determine whether section 280 is wholly unconstitutional, and I will therefore confine myself to the question of the powers and jurisdiction of the Board to hear and determine a purely equitable issue.

I shall state at the outset that I fully appreciate the fact that the Federal Government may confer extensive powers on its executive officers, make their determinations final, and bar the courts from interference unless the determination complained of is affected by fraud or the officer is proceeding out of his jurisdiction, or, if a person is affected, he is not given an opportunity to be heard. Among the cases so holding are *American School of Magnetic Healing* v. *McAnulty*, 187 U. S. 94; *Smelting Co.* v. *Kemp*, 104 U. S. 636; and *United States* v. *Ju Toy*, 198 U. S. 253. Cf. *Ng Fung Ho* v. *White*, 259 U. S. 276. This rule applies with great force to tax matters for the all-important and vital reason that the Government can not exist without revenue and therefore should not be hampered in the prompt and expedi-

tious collection of its taxes. See *Cheatham* v. *United States*, 92 U. S. 85; *State Railroad Tax Cases*, 92 U. S. 575; *Springer* v. *United States*, 102 U. S. 586; *Dodge* v. *Osborn*, 240 U. S. 118; *Bailey* v. *George*, 259 U. S. 16; and *Wickwire* v. *Reinicke*, 275 U. S. 101.

It may be noted, and this is important, that in all the cases above cited a statute created and defined the liability. Section 280 neither creates nor defines the liability of a transferee. While the obvious purpose of section 280 is the collection of taxes, it does not in any way impose a liability for a tax upon a transferee. The liability sought to be enforced is not the creation of the taxing or any other statute. It is a liability at law or in equity. The liability is no greater with respect to the tax of the transferor than with respect to his general indebtedness. It is not a liability for the transferor's taxes as such, but for all his liabilities, including taxes. If the section imposed a liability upon a transferee for the taxes of a transferor an entirely different question would be presented. The issue is not whether the Board has the power to determine a tax liability, but is whether it has the power to determine a liability existing only at law or in equity, with the consequent result that the tax obligation of one may be collected from another, against whom the tax was not assessed and from whom it can not be collected under any provision of any of the revenue acts or other Federal statutes. Thus the question is narrowed to this, May the Board be empowered by statute to hear and determine not a tax liability, but a liability at law or in equity?

The vital fact in these proceedings is that the Board is not and, as now constituted, can not be a constitutional court and is not a court of equity. It does not possess the vital and peculiarly equitable power of affording complete relief. See *Minnesota* v. *Northern Securities Co.*, 184 U. S. 199. The only party who is permitted to appeal is the complaining taxpayer and the only adverse party is the Commissioner. It can not order or even consider the advisability of making others parties to these proceedings and whose absence in an equitable proceeding might under a given state of facts cause the dismissal of the action. Cf. *Shields* v. *Barrow*, 17 How. 130. It can not issue any equitable writs necessary to do complete justice; it can not order an accounting; it can not marshal assets; it can not cancel deeds or other written instruments, the cancellation of which may be absolutely necessary to complete justice. In short, it can in no way function as a court of equity, yet it is called upon to hear and determine a purely equitable issue. Such shortcomings in the functions which the Board may exercise are real substance rather than a mere recital of the difficulties which we may encounter in the attempted administration of the statute.

The facts in these proceedings raise the question of the liability of stockholders of a practically defunct corporation to respondent for its obligations on the ground that they have received assets which it is asserted should have been used to pay its liabilities, including its taxes. Whatever may be the theory upon which such liability is based, it remains that the liability is purely equitable, and can be enforced only by a court of equity and then upon equitable principles. *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371; *McDonald* v. *Williams*, 177 U. S. 397. A court of law does not possess such jurisdiction. *Lawrence* v. *Greener*, 97 Fed. 906. Thus it appears that section 280 imposes on the Board, which is not a constitutional court, and which possesses no equity jurisdiction, the authority to hear and determine a liability which is of solely equitable cognizance and which can not be enforced by a court of law.

In these proceedings petitioners raise the question of the absence of the fourth stockholder, and also point out that respondent has determined that one petitioner is liable for the whole tax of the corporation; that the other two are each separately liable for one-half of the whole tax; is now seeking to hold each petitioner separately liable for the whole tax; and that although the proceedings are by consent heard together, the determination in each proceeding must be entirely separate. On the question of the necessity of joining other parties, respondent cites *Hatch* v. *Dana*, 101 U. S. 205; *Adams* v. *Perryman*, 202 Ala. 469; 80 So. 853; *Kimbrough* v. *Davis*, 104 Miss. 722; 61 So. 697; and *Bartlett* v. *Drew*, 57 N. Y. 587. These authorities respondent contends support the view that the liability of each petitioner is several, and therefore he insists that the Board should determine that each petitioner is liable for the whole tax. However, there is very respectable authority to the contrary. See *Updike* v. *United States*, 8 Fed. (2d) 912, and *United States* v. *Armstrong*, 26 Fed. (2d) 227. Whatever may be the answer to these questions, it is at once apparent that they raise issues which are foreign to the jurisdiction and functions of the Board, as now constituted, and which, until the powers of the Board are enlarged, I am of the opinion it is not equipped to determine.

It may be that the Board will find a way to determine the issues presented in these particular proceedings. The facts are few and simple and all of them are stipulated. But the fact that the Board may be capable of rendering a final determination in these proceedings by no means solves the problem presented.

Even though the Board should reach the same result as would a court of equity, the question remains whether petitioners have been deprived of their property without due process of law. Thus in *Coe* v. *Armour Fertilizer Works*, 237 U. S. 413, it is said:

To one who protests against the taking of his property without due process of law, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits. *Rees* v. *Watertown*, 19 Wall. 107, 123.

The statute whose validity is contested is comprised in a single paragraph of a subsection of one section. It applies to all transferees of property of taxpayers who are liable at law or in equity for the debts or liabilities of a taxpayer. This paragraph can not be separated and held valid as to certain transferees and invalid as to others. This is the decision in *United States* v. *Ju Toy; supra.* Neither does section 1213 of the Revenue Act of 1926 relieve the situation. Under that section neither the Board nor any court can rewrite the section so as to hold some transferees and release others. " This is legislative work beyond the power and function of the court," (*Hill* v. *Wallace*, 259 U. S. 44) and of course beyond the power of the Board.

For these reasons, I will now turn to those cases in which other parties are indispensably necessary to the doing of complete justice, or where it is absolutely necessary to the accomplishment of such justice that equitable remedies be applied.

I have taken occasion to examine some of the many cases now pending on our docket similar to the instant proceedings, where there are contracts either direct or collateral between the stockholders or between them and the corporation which may have to be litigated in order to secure an equitable determination of the rights of the parties, nay, even the liability of the transferee himself; cases arising under deeds or other conveyances which the Commissioner deems fraudulent or constructively fraudulent and in connection with which are promissory notes held by third parties whom the Commissioner deems parties to the fraud; cases in which it may be such other parties are indispensably necessary to a final and complete determination; cases where the remedy of cancellation should be invoked in order to prevent irreparable injury; cases where injunction should be issued for the same purpose; cases where an accounting or a marshaling of assets is absolutely required. In short, cases are before us running the whole gamut of equity jurisprudence. It was because courts of law could not do complete justice that courts of equity were established, and it has been the pride of these courts that they are able to grant complete relief and redress practically all wrongs. I can not conceive that any part of this jurisdiction can be conferred upon " an independent agency in the Executive branch of the Government " if for no other reason than that such a scheme is unworkable.

It is however contended that hearings before the Board are reviewable by the Circuit Court of Appeals or by the Court of Appeals of the District of Columbia and that in this way a complaining trans-

feree gets the benefit afforded by the Federal courts. It is, however, contended by *amici curiae* that no appeal is permitted by the statute to transferees. They point out that the right to appeal is granted by section 1001 of the Revenue Act of 1926 and is confined to the " Commissioner or the taxpayer " and they contend that under the terms of section 280 the transferee is not the taxpayer. In my opinion this question addresses itself solely to the appellate court. It is a matter wholly beyond our jurisdiction and I will assume for the purpose of this dissenting opinion that the appellate courts have jurisdiction. The only power the appellate courts have is to review the determination of the Board and—

Upon such review, such courts shall have power to affirm or, if the decision of the Board is not in accordance with the law, to modify or reverse the decision of the Board, with or without remanding the case for a rehearing, as justice may require. (Section 1003 (b), Revenue Act of 1926.)

Under these provisions transferees would not be afforded a trial *de novo* in their cases. No new parties could be impleaded. The appellate court could grant no equitable relief or equitable remedy. Transferees are not afforded their day in a court which could hear their complaints and grant them equitable relief or remedies or determine their cases upon equitable principles.

There is, however, another objection to which I will advert in a few words. The decision of all cases in law and equity arising under the Constitution and laws of the United States and of all controversies to which the United States is a party is confided by clause 1, section 2, Article III of the Constitution to the courts of the United States, as defined in that article. Here, as I have pointed out, there is no controversy over a tax liability. The controversy is whether these petitioners are liable in equity for all the liabilities of the corporation, including the tax. Thus the Board is made to step out of its functions as a tax-determining body and assume the functions of a court of equity, a function which can be exercised only by the courts specified in Article III.

I find comfort in the able decision of Judge Dawson in *Owensboro Ditcher & Grader Co.* v. *Lucas*, 18 Fed. (2d) 798, and the two decisions of the United States District Courts of Ohio in *Tyroler* v. *Routzahn* and *Clymer* v. *Nauts* (both unreported), where section 280 has been held to be unconstitutional.

I have given this question long and careful consideration and have tried to reconcile every reasonable doubt in favor of the validity of the functions sought to be imposed on the Board. However, I am convinced that the Board can not function as a court of equity, and since it is not a constitutional court, such power can not be conferred upon it. While realizing that the action of the majority to restore

these proceedings for further argument is a matter resting in their sound discretion, I nevertheless feel since the parties have fully stipulated the facts and argued the question at length we should not further delay (section 280 cases having been pending on our docket for over two years) a decision on this very important question.

---

LOVE, dissenting: I can not agree with the opinion in this case, although I do agree with the result, modified to some extent as hereinafter indicated.

I do not believe that the doctrine of estoppel is involved. The petitioners came to the Board challenging the constitutionality of section 280, and I believe the Board should pass upon that issue of law. I believe that the Board has the legal power to pass upon that issue. . I can perceive no difference between the power of a tribunal to judicially construe a statute, and to judicially construe the Constitution, except in the manner of property. Any tribunal below the Supreme Court should approach a proposal to declare an Act of Congress invalid with diffidence and extreme caution. In this case I see no way of avoiding that issue.

It is a well recognized rule of pleading that estoppel is available only as a result of its being specifically pleaded. Estoppel was not pleaded in this case. As a basis for applying the doctrine of estoppel, it is claimed that the petitioners came to the Board seeking relief, and that in doing so, they invoked the provisions of section 280, and having done so, are now estopped from challenging its constitutionality.

Section 280 does not declare a tax against petitioners. The Commissioner has not determined a tax, or a deficiency against the petitioners. What the Commissioner is here seeking to do is to fix upon and collect from petitioners an obligation of another person. It is an action in assumpsit. The Commissioner, in reality has not determined that petitioners are due a tax, as such, but is seeking to establish a liability against the petitioners to pay an obligation of another, which liability, if existent, arises by reason of the presence of such conditions as render them liable for those obligations, either in law, or in equity. Prior to the enactment of section 280, the Commissioner had the right to establish such a liability and collect from transferees, so liable, the tax due by the transferor. He then went into the courts and established the liability in the same way that any other creditor would have established such liability. Section 280 prescribes the liability of a transferee for the tax due by the transferor, as such liability exists in law or equity, that is, the same liability as exists with reference to any other creditor of the transferor. It is conceded that it was the design and purpose of

Congress that the Board should adjudicate such cases. However, the Commissioner can now pursue the same course which he pursued before the enactment of section 280. In the case at bar, he proceeded under section 280. He, and not the petitioners, invoked the provisions of section 280.

The petitioners, when they received the deficiency notice from the Commissioner, found themselves entangled in the meshes of section 280, and came to the Board for relief, in pursuance of the purpose and plan of Congress, as well as following the information given them by the Commissioner in that deficiency notice. The authorities cited and quoted in support of the decision based on estoppel, do not seem to me to be applicable to the situation now being dealt with.

However, petitioners seem to rest their whole defense on the proposition that section 280 is unconstitutional and hence invalid. I believe it is plainly constitutional. The plain English of what it does is to declare that the transferor's tax liability shall be deemed on a parity with his other liabilities and that after he transfers his assets to another person, that other person shall be liable for the tax debt as he is liable, in law or in equity, for other debts of the transferor.

The application of the provisions of section 280 may be unworkable before the Board, provided the procedure before the Board for determining the necessary issues involved, is restricted as some contend that it is restricted. But being unworkable before the Board does not render the statute unconstitutional.

In order to fix liability on a transferee, which is a secondary liability, a court of equity would adjudicate at least four issues:

1. The primary liability of the transferor must be established. Until that liability is established, there will not be granted a decree of secondary liability.

2. It must be shown that for some reason the primary obligor is irresponsive to the procedure for the collection of the obligation. Means for the collection of the obligation from the primary obligor must be exhausted before recourse may be had against the secondary obligor.

3. The total amount of obligations due by the primary obligor, and a list of obligees must be shown.

A court of equity will not render a decree against a secondary obligor, without first apportioning the total amount of obligations, as compared with total assets, among all the creditors. The Government is not a preferred creditor in a case of the kind we have here.

4. Having adjudicated the three foregoing issues, and having made such findings as will justify further procedure, the court will then determine whether or not the transferee is secondarily liable, either in law or in equity, and if so, to what extent.

A court of equity has the power or jurisdiction to do all things necessary to adjudicate all the necessary issues involved, and to do complete justice to all parties concerned.

The Board is not a court in the full and legal sense of that term. It was created for the purpose of adjudicating income and estate-tax controversies and endowed with jurisdiction to perform such functions, and only such functions. For the adjudication of such cases, Congress endowed it with judicial powers, and being so endowed, it is, for the purposes for which it was created, essentially a court and may invoke the doctrine of implied, or inherent powers whenever, and wherever necessary, to the same extent as any other court. It is therefore my opinion that by reason of the fact that Congress had the constitutional right to grant such powers to the Board, and by reason of the fact that Congress put upon the Board the duty of adjudicating controversies arising under and by virtue of section 280, and that by virtue of the well recognized and often invoked doctrine of implied powers, the Board has the legal right to use all necessary means, and to inquire into and adjudicate all necessary phases of the subject matter under consideration, and bring before it all necessary parties and do all things necessary to be done to a complete adjudication of all contested and necessary issues.

It has been urged that in determining the question of secondary liability that the parties are entitled to, and may demand a jury; and because of the fact that no provision has been made for a jury trial before the Board, that the application of the provisions of section 280 is unworkable by the Board. There may be cases involving that section, when the defense is one in law rather than in equity, where the parties would have a right to demand a jury, but a jury may be waived and unless and until that demand is made, that impediment will not arise. If and when that impediment does arise, it will operate to oust the jurisdiction of the Board to hear and determine that case.

In the case at bar, the liability of the primary obligor is admitted. Also it is admitted that the petitioners are transferees in the meaning of section 280. Also it is admitted that each received in distribution, without consideration, assets of the transferor, in value greater than the obligation of the transferor for taxes, and that the primary obligor is now insolvent. There is only one necessary fact not specifically admitted, and that is that there were no creditors other than the Government entitled to share in those assets. From all the circumstances of this case, we may reasonably conclude that there were no other creditors, and with that conclusion reached, and in view of the admission that each distributee received more in distribution than the amount of the tax due, a decision should be made approving

the action of the Commissioner, that is, that each is liable for the full amount of the tax, limited of course in the aggregate to the amount of the tax with interest.

I deem it unnecessary for the Board to consider the matter of contribution as among the petitioners themselves. They have their remedy, independent of the Board's functions as to that feature of the case.

---

GREEN, dissenting: In the main I find myself in accord with what has been said in the foregoing dissenting opinions, except that I believe that in certain cases this Board not only can, but must, pass on constitutional questions. I believe that to be imposed upon us by Congress.

The majority opinion is based, in part, upon a "well settled principle that one can not invoke the aid of a statute conferring jurisdiction and at the same time attack the validity of the statute so invoked." It is also based upon a rule of law which "seems to be equally well established that one can not take advantage of a statute and then question its constitutionality." I am unable to see how either of these rules or principles is applicable in this case. As to the first rule, it should be stated that neither the parties nor the writer of the prevailing opinion have questioned our jurisdiction. As to the second rule, I believe it to be applicable only where the party litigant has invoked the statute and then questioned its constitutionality. In this case the petitioners did not invoke section 280. They could not. The respondent invoked the section by proposing to collect the transferor's tax thereunder. It is not enough to say that the transferee might have paid the amount claimed and brought suit for refund. That does not relieve him of section 280 nor the collection which has been made thereunder. Once the Commissioner of Internal Revenue, using the means provided in section 280, has started to collect from the transferee, all subsequent proceedings, whether they be before this Board or a court of appeals or in a suit for refund, have their foundation in the section and their validity depends upon its validity, for from that section and that section alone does the Commissioner derive his right to collect from the transferee, without suit, the liability of the transferor. But for section 280 there would have been no such proceedings. Under such circumstances I do not see how it can be said that these petitioners may not challenge the validity of the section. They could not choose the method of enforcing payment which the Commissioner was to use. They could not prevent him from proceeding under section 280. They have taken no action giving rise to a waiver or estoppel. They have accepted the jurisdiction of this Board and challenged

the validity of the statute under which the Commissioner proposes to collect from them. I am accordingly of the opinion that neither of the principles upon which the prevailing opinion is based has any application to these cases.

The Committee Reports would indicate that it was intended that section 280 do away with other means of assessment, collection, refund or credit. If this be the law, and the transferee brought a suit for refund, since his right to refund would depend upon section 280, it might, with equal propriety, be held that he could not in that proceeding, test the constitutionality of the section. If the suit for refund is not under section 280, still the determination by the Commissioner and his assessment and collection of the liability are based upon section 280 and many of the transferee's rights are bound up therein and again there is presented the question of his right to challenge the constitutionality of the section.

Some of the results which follow from an application of the section have already been pointed out. There are others which I believe worthy of brief mention. Some of the most serious of these arise from the fact that this Board is not a court. Its decision that the transferee is liable is not a judgment or decree and can not serve as a basis for suit for contribution from the cotransferees. Whether in a suit by other creditors, our decision and payment thereunder may be set up as a defense by the transferee, is, to say the least, an open question.

There are situations where the Government is not a preferred creditor and in such cases a unique situation arises. If in such a case a transferee is held liable to the full amount of the corporate distribution to him and there are other creditors of the corporation, how can he escape his liability to the other creditors for an amount equal to their pro rata share of the excess paid by him to the Government over and above the Government's share as an ordinary creditor? Likewise how can he compel contribution by his cotransferees for such excess?

By this section those secondarily liable are subjected to a proceeding to collect from them as if they were primarily liable, when in fact the liability is only secondary and the primary liability has not been first established.

It is true, of course, that the courts have been very loath indeed to hamper the collection of revenues, but there is a limit beyond which Congress, by legislation, and the Commissioner, by enforcement, may not go. It seems to me that this section deprives citizens of so many of the rights which the courts have so jealously protected for them, that it has gone beyond the limit, particularly if, since it prescribes collection from transferees, the collection is not of a tax but of a debt. See *Fong Yue Ting* v. *United States*, 149 U. S. 698.