*3 OPINION.
ARUNdell :
The decision of the first issue is controlled by Henry
Cappellini, 14 B. T. A. 1269, holding that where petitioners seek a redetermination of their liability as transferees under section 280 of the Revenue Act of 1926, they may not question its validity.
It does not appear from the record whether or not the corporation has ever been legally dissolved. It was liquidated in 1923, 1924, or 1925, and has neither engaged in business nor maintained an office since its assets were distributed to its stockholders. The taxes were duly assessed against the corporation in May, 1926. Investigations made by the deputy collector in his endeavor to execute the distraint warrants issued thereafter disclosed no corporate assets against which satisfaction of the taxes due could be obtained. Suit against the transferor would have been useless procedure.. Under such circumstances the respondent is not required to institute suit against the transferor before proceeding against the transferees of its assets. On this issue the respondent is sustained. Woodley Petroleum Co. et al., 16 B. T. A. 253; Angier Corporation, 17 B. T. A. 1376; B. F. Fairless et al., 19 B. T. A. 304.
*4 The contention being made that the respondent must proceed against all of the transferees of corporate assets, and in such proceedings call upon each for an equal contribution, is without merit, each transferee being liable for unpaid taxes of a transferor to the extent of the amount received in liquidation. Henry Cappellini, supra; Grand Rapids National Bank, 15 B. T. A. 1166.
Under the remaining issue the right of the transferor to special assessment is claimed on the ground that an abnormality of income exists by reason of low salaries paid to the corporation’s officers and the exclusion from invested capital of amounts expended for rug and carpet patterns.
In 1918 petitioner’s officers received as compensation for their services salaries amounting to $15,600. The amount of compensation paid to them in 1919, if any, does not appear of record. George Flint, who was president of the corporation prior to 1914, testified that he thought the salaries paid in 1918 were not reasonable for services rendered. Nothing was offered in proof of what would have been reasonable compensation for their services. If we were to accept this testimony as establishing that the salaries paid were less than reasonable amounts, that fact alone would not prove the existence of an abnormality in capital or income justifying special assessment. Eagle Piece Dye Works, 10 B. T. A. 1360; Kossar & Co., 16 B. T. A. 952; Green, Matthews, Taylor Co., 19 B. T. A. 359.
Prior to 1914 the corporation developed patterns for the manufacture of rugs and carpets at a cost of about $85,000, all of which amount was charged to expense and never capitalized on the corporate books. Patterns were discarded from time to time in favor of new ones, to meet the requirements of the corporation’s trade. It does not appear from the evidence whether or not the respondent included the cost of the patterns developed before 1914 in his determination of the corporation’s invested capital for 1918 and 1919, or whether any of such assets were employed in the corporation’s business in 1918 and 1919, and, if so, the part they played in the production of its income in those years. The value of the patterns on January 1, 1918, was less than their cost. Section 327 of the 1918 Act is not applicable where the tax “is high merely because the corporation earned within the taxable year a high rate of profit upon a normal invested capital.” The corporation’s failure to capitalize on its books amounts expended prior to 1914 for patterns did licit, in our opinion, create such an abnormal condition as to justify special assessment.
The evidence does not show that the corporation comes within any of the other provisions of section 327 of the statute.

Decision will be entered for the respondent.