E. A. LANDRETH CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

E. A. LANDRETH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ADELLE H. LANDRETH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 15835, 16842, 16843.   Promulgated February 28, 1929.

*L. K. Mostellar*, *Esq.*, and *L. E. Cahill*, *Esq.*, for the petitioners.
*Bruce A. Low*, *Esq.*, and *Geo. S. Herr*, *Esq.*, for the respondent.

OPINION.

MILLIKEN: These proceedings were heard at Tulsa, Okla., on October 3, 1927, and our decision was promulgated March 16, 1928. See 11 B. T. A. 1. On July 11, 1928, and before a final determination of the taxes had been made and entered, petitioner, E. A. Landreth Co., filed its motion for a reconsideration of said decision. The motion, after making certain excerpts from the opinion; after quoting section 704 of the Revenue Act of 1928; after stating that Landreth year Co. had made its returns for the period October 28, 1920–31, 1920, and for the calendar year 1921, on Form 1041;

WHEREFORE, ...istence of Landreth Water Co. terminated in the moves this Honora...
16, 1928, be modified an... Water Company for the year...rough its attorney L. E. Cahill, respectfully income and excess profits taxes of the decision in this case promulgated March 1920 and 1921. ...de that the income of the Landreth ...o excluded in determining the

On September 12, 1928, the motion to ret. Company for such years the proceeding was set for hearing on December ... ington, D. C., at which time further proceedings were ...ted and motion heard and submitted. At the hearing on this moti...sh- tioner, E. A. Landreth Co., raised the alternative question whether the Board had jurisdiction over the Landreth Water Co., for the reason that respondent had not mailed a 60-day letter to Landreth Water Co., as required by section 274 (a) of the Revenue Act of 1926. Time was allowed within which counsel for the respective parties might file briefs. We were not favored with a brief for or on behalf of respondent.

On March 15, 1921, the Landreth Water Co. filed its income-tax return for the period October 28, 1920–December 31, 1920, on Form 1041, which is the form for a fiduciary return. On March 15, 1922,

the same company filed its income-tax return for the calendar year 1921 on Form 1041. Thereafter, on January 30, 1925, a revenue agent made and filed returns in behalf of Landreth Water Co. for said periods on Form 1120, which is the form for the return of corporate income.

Section 704 of the Revenue Act of 1928 reads:

(a) If a taxpayer filed a return as a trust for any taxable year prior to the taxable year 1925 such taxpayer shall be taxable as a trust for such year and not as a corporation, if such taxpayer was considered to be taxable as a trust and not as a corporation either (1) under the regulations in force at the time the return was made or at the time of the termination of its existence, or (2) under any ruling of the Commissioner or any duly authorized officer of the Bureau of Internal Revenue applicable to any of such years, and interpretative of any provision of the Revenue Act of 1918, 1921, or 1924, which had not been reversed or revoked prior to the time the return was made, or under any such ruling made after the return was filed which had not been reversed or revoked prior to the time of the termination of the taxpayer's existence.

(b) For the purpose of the Revenue Act of 1926 and prior Revenue Acts, a trust shall, at the option of the trustee exercised within one year after the enactment of this Act, be considered as a trust the income of which is taxable (whether distributed or not) to the beneficiaries, and not as an association, if such trust (1) had a single trustee, and (2) was created and operated for the sole purpose of liquidating real property as a single venture (with such powers of administration as are incidental thereto, including the acquisition, improvement, conservation, division, and sale of such property), distributing the proceeds therefrom in due course to or for the benefit of the beneficiaries, and discharging indebtedness secured by the trust property, and (3) has not made a return for the taxable year as an association.

It seems clear under the facts of this proceeding that subsection (b) of section 704 has no application, for the following reasons: (1) The trustee of the Landreth Water Co. has not exercised the option therein given him; and (2) the Landreth Water Co. was not created or operated for the sole purpose of liquidating real property as a single venture. On the other hand, that company was organized for the purpose (see article III of the declaration of trust of the Landreth Water Co.) of conducting, operating and maintaining a water system and selling water to individuals, corporations, and municipalities.

This brings us to the application of subdivision (a). The first question is whether the Landreth Water Co. was taxable as a trust under the regulations of the Commissioner in existence at the time returns were made or at the time of the termination of its existence. These regulations are those applicable to the Revenue Acts of 1918 and 1921, which are Regulations 45 (1920 Edition) and Regulations 62 (1922 Edition). Article 1504 of both regulations is the same and reads:

ART. 1504. *Association distinguished from trust.*—Where trustees hold real estate subject to a lease and collect the rents, doing no business other than dis-

tributing the income less taxes and similar expenses to the holders of their receipt certificates, who have no control except the right of filling a vacancy among the trustees and of consenting to a modification of the terms of the trust, no association exists and the cestuis que trust are liable to tax as beneficiaries of a trust the income of which is to be distributed periodically, whether or not at regular intervals. But in such a trust if the trustees pursuant to the terms thereof have the right to hold the income for future distribution, the net income is taxed to the trustees instead of to the beneficiaries. See section 219 of the statute and articles 341-347. If, however, the cestuis que trust have a voice in the conduct of the business of the trust, whether through the right periodically to elect trustees or otherwise, the trust is an association within the meaning of the statute.

It is at once apparent that the above regulation is applicable only to a case where a trustee holds real estate subject to a lease and collects the rents, doing no business other than distributing the income, less taxes. Such an organization is so different from the Landreth Water Co. that we can not hold that this company is under the regulation above set forth taxable as a trust.

The provisions of section 704 (a) are in the alternative, the second of which is:

or (2) under any ruling of the Commissioner or any duly authorized officer of the Bureau of Internal Revenue applicable to any of such years, and interpretative of any provision of the Revenue Act of 1918, 1921, or 1924, which had not been reversed or revoked prior to the time the return was made, or under any such ruling made after the return was filed which had not been reversed or revoked prior to the time of the termination of the taxpayer's existence.

The only sources disclosing such rulings are the Cumulative Bulletins. The first of these, Cumulative Bulletin No. 1, covers the period April-December, 1919. These Cumulative Bulletins are issued by the Bureau of Internal Revenue and each title page has on it a facsimile of the seal of that Bureau. All of them are printed by the Government Printing Office. On the title page of Cumulative Bulletin No. 1 is the following:—

THE INCOME TAX RULINGS constitute a service of information from which taxpayers and their counsel may obtain the best available indication of the trend and tendency of official opinion in the administration of the income and profits tax provisions of the Revenue Acts. The rulings have none of the force or effect of Treasury Decisions and do not commit the Department to any interpretation of law which has not been formally approved and promulgated by the Secretary of the Treasury. Each ruling embodies the administrative application of ' law and Treasury Decisions to the entire state of facts upon which a p~ case arises. It is especially to be noted that the same result will n~' the be reached in another case unless all the material facts are id~ . articular of the reported case. As it is not always feasible to pub'' ~c necessarily ment of the facts underlying each ruling, there can ' ~ntical with those new case is identical with the reported case. A ~ish a complete state- it may be observed that the rulings publishe~ . oe no assurance that any reverse rulings previously published. ~s bearing out this distinction, ~ from time to time may appear to

Officers of the Bureau of Internal Revenue are especially cautioned against reaching a conclusion in any case merely on the basis of similarity to a published Income Tax Ruling, and should base their judgment on the application of all pertinent provisions of the law and Treasury Decisions to all of the facts in each case. The Income Tax Rulings should be used merely as aids in studying the law and the Treasury Decisions.

The title pages of the subsequent volumes have printed on them either the above excerpt or words to the same effect. The question presented is, Are these the rulings referred to in section 704? The Report of the Committee on Finance on the Bill which became the Revenue Act of 1928 (Rept. 960) contains the following:

SEC. 704. TAXABILITY OF TRUSTS AS CORPORATIONS—RETROACTIVE.

Difficulty has been experienced in determining whether under prior revenue laws an organization was taxable as a trust or as a corporation. The rules have differed from time to time. There have been conflicting court decisions, and it appears desirable to clarify the situation by making definite provisions for such cases. Section 704 (a) provides that if a return was filed as a trust for any taxable year preceding the taxable year 1925, the organization shall be taxed as a trust for such year if it was taxable as a trust under the regulations or any interpretative ruling of the Bureau of Internal Revenue in force at the time the return was filed or when the trust was terminated. Retroactive relief appears to be proper in connection with organizations of this character because in many cases no question was raised as to tax liability until after the trust had been dissolved. It is believed that the foregoing rule will operate equitably.

The report of the Committee on Ways and Means of the House is to the same effect.

Since the purpose of the section is purely remedial and for the benefit of the taxpayer, it should be interpreted liberally in his favor. *Bowers* v. *New York & Albany Lighterage Co.*, 273 U. S. 346; Lewis' Sutherland Statutory Construction, 2d Ed., secs. 336 and 680. Giving this section a liberal construction and looking to its history, it appears that the rulings referred to are those which do not have the dignity of a regulation or a Treasury Decision, which indeed are the same. A regulation or a Treasury Decision is binding on all the officers and employees of the Bureau of Internal Revenue. The rulings in the Cumulative Bulletins, while not binding, are interpretative and were followed by the officials of that Bureau in the application of the various sections of the revenue acts. That these rulings were made by the duly authorized officers of that Bureau appears from the fact that they are published and issued by the Government Printing Office at the instance of the Bureau of Internal Revenue. To reject these rulings would be to confine section 704 (a) to the regulations of the Commissioner and render futile that part which expressly refers to rulings. Such a construction should be rejected if any other reasonable construction can be made. *United States* v. *Freeman*, 239 U. S. 117; *Sandberg* v. *McDonald*, 248 U. S. 185. We are, therefore, of the opinion that the rulings contained in

the Cumulative Bulletins are applicable to the solution of the question presented in these proceedings.

Since section 704 (a) limits the rulings to those in effect within certain periods and since the periods involved in these proceedings begin with the filing of the first return of Landreth Water Co., which was on March 15, 1921, and end with the filing of its last return, which was March 15, 1922, it becomes necessary to state the date on which the rulings were made. We are not furnished with the exact date of the making of each ruling but each volume of the Cumulative Bulletin states the period it covers. These are as follows:

| Cumulative | Bulletin | No. | 1 | April– | December | 1919 |
|------------|----------|-----|---|--------|----------|------|
| " | " | " | 2 | January–June | | 1920 |
| " | " | " | 3 | July– | December | 1920 |
| " | " | " | 4 | January–June | | 1921 |
| " | " | " | 5 | July– | December | 1921 |
| " | " | " I–1 | January–June | | 1922 |
| " | " | " I–2 | July– | December | 1922 |

We have included the last volume for the reason that it contains a ruling which is in harmony with those contained in the previous volumes. By reason of the statement printed on the title page of each volume limiting each ruling to the facts therein stated, we will quote each ruling in full:

Solicitor's Memorandum 1205, Cumulative Bulletin No. 1 reads:

Section II, paragraph G (a), act of October 3, 1913, provides in part as follows:

> That the normal tax hereinbefore imposed upon individuals likewise shall be levied, assessed, and paid annually upon the entire net income arising or accruing from all sources during the preceding calendar year to every corporation, joint-stock company, or association, and every insurance company, organized in the United States, no matter how created or organized, not including partnerships, but if organized, authorized, or existing under the laws of any foreign country, then upon the amount of net income accruing from business transacted and capital invested within the United States during such year.

The M Company is a trust created by an agreement between the N Company and certain trustees. Under this agreement shares of stock in various companies were transferred to the trustees for the period of the lives of certain persons named therein and twenty years after the death of the survivor. The trustees, in accordance with this agreement, issued certificates of beneficial interest, each certificate stating the number of shares to which the person named therein was entitled, and each original beneficiary being entitled to receive a number of shares to which the person named therein was entitled, and each original beneficiary being entitled to receive a number of shares of the trust equal to the number of shares of stock in the O Company registered in his name. It was provided in the trust agreement that the trustees should be self-perpetuating, should have complete and absolute control of the property, including the power of sale and reinvestment of the proceeds. The rights of the certificate holders

were expressly limited to receiving such distributions of net income or proceeds of the property as the trustees might declare. It was also provided that the trustees should in no event have recourse to the certificate holders in the payment of any expenses for any liability incurred by the trustees and that upon the expiration of the trust, the trustees should distribute ratably among the certificate holders all money remaining in their hands, and convey and transfer all property other than money to the N Company. The certificates were without par value and were in terms assignable on the books of the trustees by transfer in writing by the holder and surrender of the certificates.

The question as to whether a trust of this nature is taxable as an association, under the several acts enumerated, depends upon the extent of the powers reserved to the holders of the certificates of beneficial interest to regulate the management of the affairs of the trust. Where the beneficiaries do not retain any substantial control over the affairs of the trust, it is held not to be an association or taxable as such. In the instant case the certificate holders have no control whatsoever over the affairs of the trust.

The contention that the trustees are themselves an association is answered by Mr. Justice Holmes in his opinion in the case of Crocker v. Malley, 249 U. S. 223, where, at page 234, he says in part as follows:

> * * * The trustees by themselves can not be a joint-stock association within the meaning of the act unless all trustees with discretionary powers are such, and the special provision for trustees in D is to be made meaningless.

It is therefore held that the M Company is not an association and consequently is not subject to income tax under the provisions of Section II, paragraph G (a), act of October 3, 1913.

## Solicitor's Memorandum 1337, Cumulative Bulletin No. 2, p. 9, is as follows:

A question arises on the claim for abatement of corporation income tax for the year 1917 assessed against the reorganization committee of the M Company.

Revenue Act of 1916, Title I, Part II, section 10, as amended, is in part as follows:

> That there shall be levied, assessed, collected, and paid annually upon the total net income received in the preceding calendar year from all sources by every corporation, joint-stock company or association, or insurance company, organized in the United States, no matter how created or organized, but not including partnerships, a tax of two per centum upon such income; * * * .

The M Company, a corporation, was heavily indebted, and receivers were appointed under court order for the company. The stockholders, bondholders and other creditors of the company hereinafter referred to as "subscribers," entered into an agreement by the terms of which they assigned to trustees, to be known as the reorganization committee of the M Company, all their stocks, bonds, claims, etc., in or against the M Company. By the terms of this agreement the trustees were authorized to organize a new corporation to take over the property and assets of the M Company, and were further authorized to acquire the properties of said company at foreclosure sale or otherwise. They were empowered to pledge or otherwise dispose of the claims and securities transferred to them in order to accomplish this purpose and for the extension and

betterment of the properties. The securities of the new corporation, when formed, were to be used to pay the costs of reorganization and improvements and the balance distributed among the subscribers, and a plan of distribution was recommended to the trustees. For this purpose it was agreed that so far as possible the claims and demands should be classified by the court, in order of priority, into three classes. In the reorganization of the old company and the formation of the new the stockholders and bondholders were entitled to vote at all elections on an equal basis; each $x$ dollar face value of such securities entitling the holder to one vote. The trust was to continue for a term of $y$ years unless the reorganization should be sooner consummated and might be extended by a majority of the subscribers. The trustees were self-perpetuating during the term of the trust and incurred no personal liability except to faithfully carry out the terms of the agreement.

In compliance with this agreement the trustees purchased the property of the M Company from the receivers at a public sale. Title was taken in the name of one of the trustees.

The question now arises whether the reorganization committee of the M Company is liable for corporation income tax under section 10, Part II, Title I, Revenue Act of 1916, as amended.

It is clear that the trustees forming the reorganization committee are not a corporation. Nor are they an insurance company. Therefore it remains to be considered whether they constitute a " joint-stock company or association " within the meaning of the Revenue Act of 1916, as amended.

It seems clear that this committee did not constitute a joint-stock association under any reasonable interpretation of those words. The committee, to be sure, held the stock and bonds of the old corporation and had power to pledge or dispose of them, but merely as trustees and as incidental to the reorganization of the old corporation and the formation of the new. The beneficial interest remained in the subscribers. The committee could not be held to be a joint-stock association within the meaning of the Revenue Act of 1916, as amended, unless all trustees with discretionary powers are such. (*Crocker* v. *Malley*, 247 U. S. 223, 234.) Nor can the trustees and subscribers together be regarded as a joint-stock association. The subscribers during the term of the trust had parted with control over the conduct of the reorganization. They had no power to remove or appoint new trustees or to control the actions of the reorganization committee. The provision of the agreement giving the stockholders and bondholders the right to vote at elections in the reorganization of the old company and the formation of the new was intended simply to protect the rights of the bondholders until their debts had been paid by giving them an equal voice with the stockholders in the control and management of the company. This provision was without force or effect during the period of reorganization for the reason that by the receivers sale all the property of the old company passed to the trustees free and clear of any control by the stockholders or bondholders. On the other hand it was provided that when the new corporation was created and the property turned over to it by the trustees the trust should automatically terminate. Thus the right to vote at elections either of the old or the new companies gave the subscribers no control over the committee or the trust property during the period of reorganization. As there was no provision in the agreement for meetings of the subscribers nor any matter on which they could vote excepting that of extending the term of the trust, in case the reorganization was not accomplished within $y$ years, it is apparent that they could exercise no control over the actions of the committee.

It is held, therefore, that the reorganization committee of the M Company is simply a trust and not a joint-stock association.

Solicitor's Opinion 56, Cumulative Bulletin No. 3, p. 10, is illuminating. That opinion reads:

The question arises as to the taxable status of the M Company under the Revenue Act of 1918.

The Revenue Act of 1918, Title I, section 1, provides in part as follows:
> That when used in this Act * * *
> The term "corporation" includes associations, joint-stock companies, and insurance companies: * * *

The M Company was created by a declaration of trust dated June 1, 1919. The declaration of trust was executed by three trustees who agreed to hold all the property transferred to them upon the trusts therein set forth. The trustees were given wide powers in handling the trust property including the right to deal with real estate, stocks, bonds and commercial paper; to make loans with or without security; to borrow money on the security of the trust estate; to engage in the business of fire, theft, automobile and fidelity insurance. They could delegate their powers to agents and employees and could represent the beneficiaries in all legal proceedings involving the trust property. The trustees were self perpetuating and could increase their number and remove any trustee thus appointed. They could select an advisory board, and executive committee, and executive officers, and could themselves be selected for such offices and could remove any such officer or member of any committee. They could alter or amend the declaration of trust and could fix the remuneration of any officers, agents or employees. They incurred no personal liability for their acts as trustees. The beneficial interest in the trust was to be represented by preferred shares of a par value of $100 each and common shares of no par value. The number of shares of no par value could be increased or reduced by the trustees. The preferred shares entitled the holder to a cumulative dividend of $10 per share per annum. After payment of this preferred dividend, a dividend of $10 per share per annum was to be paid to the holders of the common shares. After such payments a sum equivalent to $5.00 per share on all outstanding shares was to be set aside out of any further earnings of the trust in a sinking fund until such fund equaled in amount the full par value of all outstanding preferred shares. The balance of any earnings was to be divided so that one-third should be paid to the preferred shareholders and two-thirds to the common shareholders. The payment of dividends was to be in the discretion of the trustees. In case of liquidation of the trust, the proceeds were to be applied first to the payment of the holders of the preferred shares and any accumulated or unpaid dividends thereon, and the balance divided among the holders of the common shares in accordance to their respective holdings. The shares of beneficial interest were to be negotiable and any trustee could own or dispose of them to the same extent as if he were not a trustee. The trustees could not bind the beneficiaries as individuals and the latter were to incur no personal liability. The trust was to continue for a term of twenty-one years after the death of the last survivor of the three original trustees. The holders of twenty per cent of the beneficial shares were at any time entitled to a statement from the trustees as to the affairs of the trust. The trustees could in their discretion call meetings of the shareholders and consider their recommendations as to the filling of vacancies among the trustees, and for other purposes which the trustees may determine.

Whether or not a trust of the general nature of the one in the instant case is to be regarded as an association under the Revenue Act of 1918, depends upon the degree of control which the beneficiaries exercise over the management of the trust. (Solicitor's Memoranda 1068, 1242.)

Under the provisions of the declaration of trust creating the M Company, complete control of the trust property appears to have been vested in the trustees. The beneficiaries could be called together to make recommendations as to the filling of vacancies existing among the trustees, but there was no obligation on the part of the trustees to accept such recommendations. Clearly the beneficiaries, as such, had no control whatsoever over the management of this trust, so far as the language of the declaration of trust is concerned. The trustees, however, have the right to acquire the shares of beneficial interest, and it does not appear to what extent the trustees or any of them have in fact acquired control by securing the ownership or control of the shares.

It is very evident that this trust was created for the purpose of gaining the advantages of corporate organization and at the same time to escape the legal requirements and the taxation to which a corporation is subject. The M Company has most of the essential elements of a corporation. There are executive officers, an executive committee, and advisory committee, corresponding to a board of directors, and stockholders owning transferable certificates of stock. The company can engage in several different kinds of business and can sue and be sued through its trustees. Neither the trustees, the officers of the company nor the stockholders are subject to liability as individuals any more than the officers or stockholders of a corporation. The real distinction lies in the fact that whereas the management of a corporation is lodged in officers elected by the stockholders, the management of the M Company is attempted to be lodged in trustees, or officers appointed by them, over whom the stockholders, as such, would have no control.

It, therefore, becomes necessary in this case to lift the trust veil and determine to what extent the beneficiaries of the trust in fact control its management. Where all of the shares of beneficial interest in a trust are owned by the trustees as beneficiaries, it is perfectly evident that, the trustees and beneficiaries being identical, the latter in fact control the former even though no control is vested in them under the terms of the trust instrument. This is no less true where the trustees, although not owning all of the shares of beneficial interest, are the owners or beneficiaries of a majority in amount of such shares. Or where the trustees own the legal or equitable interest in a substantial number of the certificates sufficient to permit them to dominate the affairs of the trust and they are in fact managing and supervising its affairs, the organization should be taxed as an association and not as a trust. The fact of actual control by the beneficiaries must in each case govern.

It is accordingly held that the M Company, which operates under a declaration of trust by the terms of which the trustees are given broad powers of management of the business which is conducted under the methods and forms ordinarily employed by incorporated bodies, must be considered an association within the meaning of the Revenue Act of 1918, in the absence of a very clear showing that the trustees in fact do not own a legal or equitable interest in a substantial number of the certificates sufficient to permit them as beneficiaries to dominate the affairs of the trust. When under the terms of a declaration of trust the control is vested only in the trustees as such, it is necessary to look to the facts in order to determine whether the trustees have acquired a

sufficient number of shares of beneficial interest to put the beneficiaries in actual control.

## Office Decision 931, Cumulative Bulletin No. 4, p. 11, reads:

The charter of the M Company expired in 1919, but under section 6198 of the Minnesota Statutes the existence of the corporation continued for the purpose of prosecuting and defending its actions, closing its affairs, disposing of its property, and dividing its capital. The section provides that such existence shall be for but three years and that the corporation shall exist for no other purposes than those mentioned. The stockholders of the corporation found that if the manufacturing plant and other property were sold immediately or in the near future, there would be a large shrinkage in the assets of the corporation. The only way to avoid such a loss was to continue the manufacturing business, particularly in connection with numerous existing contracts, and eventually close out the property at a favorable time. This, however, they could not do under section 6198 of the Minnesota Statutes and they, therefore, transferred the entire properties of the corporation to A and B, trustees under a trust agreement. By the terms of the trust agreement the trustees were to hold and operate the property as the N organization; were given full and exclusive power and authority to control and manage the trust property and business; and neither the beneficiaries nor the trustees were to be liable or responsible for any indebtedness or obligations contracted or incurred by the trustees in their conduct or management of the business. The trust was to continue for a period of 10 years unless sooner terminated by sale and disposition of the trust property and business. The evidence submitted clearly shows that the sole purpose in thus conveying the entire properties of the M Company to the trustees was to enable the business to continue as a going concern and not merely for the purposes of dissolution as provided for by section 6198 of the Minnesota Statutes.

Section 239 of the Revenue Act of 1918 provides in part as follows:

> * *. * In cases where receivers, trustees in bankruptcy, or assignees are operating the property or business or corporations, such receivers, trustees, or assignees shall make returns for such corporations in the same manner and form as corporations are required to make returns. * * *

The above section refers only to cases where the business of a corporation is being operated by receivers, trustees in bankruptcy, or assignees for the corporation. This is made clear by article 622 of Regulations 45, where the following language is used:

> Notwithstanding that the powers and functions of a corporation are suspended and that the property and business are for the time being in the custody of the receiver, trustee, or assignee, subject to the order of the court, such receiver, trustee, or assignee stands in the place of the corporate officers and is required to perform all the duties and assume all the liabilities which would devolve upon the officers of the corporation were they in control.

If, in the present case, the M Company at the expiration of its charter had placed its affairs in the hands of trustees in order to dissolve the corporation within the three year limit, the trustees would be required to file returns as provided by section 239 and article 622, Regulations 45. But that is not the

situation here. The trustees are not trustees in dissolution. The property of the corporation has been conveyed to them absolutely and they are continuing the business, formerly operated by the corporation, until such time as the property may be disposed of advantageously. In the meantime, the M Company still exists by force of section 6198 of the Minnesota Statutes above referred to. If the trustees of the M Company are trustees in dissolution, then their actions as such trustees are contrary to law, as they are operating the corporate business in violation of section 6198 of the Minnesota Statutes. It is not believed, however, that this is the case.

If it be granted then that the trustees are not trustees in dissolution and acting for the corporation but are acting for themselves as trustees of a trust property, do such trustees constitute a corporation, joint-stock company, association or insurance company within the meaning of section 1, Revenue Act of 1918?

Clearly the trustees are not a corporation or an insurance company. The only question, therefore, is whether they constitute a joint-stock company or an association within the meaning of section 1 of the Revenue Act of 1918.

It is not believed that the trustees constitute a joint-stock company or association. They have full power and control over the property of the corporation conveyed to them and hold and operate such property until an advantageous opportunity arises for disposing of it. The beneficial interest remains in the stockholders of the corporation in proportion to their stock holdings but the power and control is vested in the trustees. The previous stockholders have no power to remove the trustees or appoint new trustees but must apply to the court. It has been consistently held that it is the extent of the control vested in beneficiaries under a trust agreement that is determinative of the question whether the trust is in fact an association. (Article 1504, Reg. 45; O. D. 407, C. B. 2, p. 11; S. 1337, C. B. 2, p. 9). Here the beneficiaries exercise no control whatever.

It is, therefore, the opinion of this office that the trustees holding and operating property under the name of the N organization are simply a trust and should not be compelled to file returns as a corporation.

Solicitor's Opinion 56, *supra*, is followed to its logical and quite peculiar result in I. T. 1464, Cumulative Bulletin I-2, page 61, which is as follows:

By the terms of a trust instrument A and B declared that they held as trustees for the benefit of the shareholders certain real property. It is provided that upon the withdrawal of a trustee, whether by death, resignation, or otherwise, the legal title held by him is to pass to the survivor, and upon the appointment of a new trustee the legal title to the trust property is to vest in him jointly with the other trustee. By the terms of the instrument the control of the trustees over the trust property is absolute, the only powers granted to the beneficiaries being to fill any vacancy at any time existing in the number of trustees, and by a two-thirds vote of the number of shares outstanding to amend the declaration of trust, except that no amendment may be made extending the duration of the trust.

Shares of beneficial interest were issued by the trustees, 48 per cent to each trustee and 4 per cent to C. One of the two trustees, A, died July, 1918, and no successor has been appointed. By the terms of the instrument the legal title of A to the trust property survived to the trustee, B. It is contended that since, prior to the death of A, the trustees constituted the majority share-

holders of the trust, they as shareholders were in control of the trust and that it was therefore an association up to the time of the death of A. It is also held that after the death of A, inasmuch as B, the surviving trustee, had more than one-third of the shares of beneficial interest and could thereby prevent any amendment of the declaration of trust, a two-thirds vote being necessary for any amendment, the trust was an association for the taxable periods subsequent to July, 1918.

Prior to the death of A, the trust must be regarded as an association and subject to tax as a corporation because of the fact that the trustees owned 96 per cent of the shares of beneficial interest. While B was, and is, in a position to prevent any amendment of the declaration of trust because of the fact that his holdings of shares of beneficial interest exceed one-third of the shares outstanding, he is not on that account the majority holder of shares of beneficial interest, he does not as shareholder control the trust, and for the taxable periods subsequent to the death of A the organization must, therefore, be regarded as a trust rather than an association.

All the other rulings contained in the various Cumulative Bulletins made during the period here involved are to the same effect. It is sufficient to say that beginning in the year 1919 and up to and including the period July–December, 1922, the Bureau of Internal Revenue was consistently ruling that irrespective of whether the taxpayer was engaged in business under the corporate forms, it was taxable as a trust in all cases where the shareholders could not control the actions of the trustees.

By article IV of the declaration of trust of the Landreth Water Co., it is provided:

The management and control of the Trust Estate and all its properties shall be vested in J. Connor Wise, and his successors, and he or they shall have sole power of management of the business of the Trust Estate, and exclusive power and authority to sell and convey, as Trustees, the said properties or any part thereof, and to distribute the revenues and the profits and all funds that may come into their hands as Trustees to and for the benefit of the respective shareholders.

Article VI provides:

The Trustee shall hold office for the entire life of the Trust, but may be removed at any time for misconduct, or breach of trust, by a majority vote of the shareholders at a meeting held for that purpose only. That in the case of the death, resignation or removal of the Trustee a new Trustee may be appointed by a majority in interest of the outstanding shareholders at a meeting held for that purpose only.

Applying the ruling of the Bureau of Internal Revenue above set forth to the provisions of the declaration of trust of the Landreth Water Co., it is apparent that that company would have been taxed by the Commissioner, during the period of its existence, as a trust. Since it was taxable as a trust, there can be no affiliation between it and E. A. Landreth Co., with the result that the invested capital and income

of the latter company should be computed independently of Landreth Water Co. Such a conclusion renders unnecessary a decision concerning the alternative contention of petitioner.

The deficiencies in taxes of E. A. Landreth Co., E. A. Landreth, and Adelle H. Landreth, will be computed under Rule 50, in accord with our opinion of March 16, 1928, as modified by this supplemental opinion.

Reviewed by the Board.