KENTUCKY OIL CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

M. R. LEWIS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

W. D. GOVER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 28873, 28874, 29789. Promulgated January 14, 1931.

*Harry C. Weeks, Esq.,* for the petitioner.
*J. R. Johnston, Esq.,* for the respondent.

OPINION.

TRAMMELL: In the view we take of these cases, it is necessary to consider only two issues raised by the pleadings. The first issue arises from the allegation of the petitioners that section 280 of the Revenue Act of 1926 is unconstitutional. In *Henry Cappellini*, 14 B. T. A. 1269, we held that a petitioner who invokes the aid of the Board to redetermine his liability as a transferee under section 280

may not in such proceeding question the validity of said section. Since our decision in that case two Circuit Courts of Appeal have held section 280 constitutional. *Routzahn* v. *Tyroler*, 36 Fed. (2d) 208; *Phillips* v. *Commissioner*, 42 Fed. (2d) 177. Upon either theory, we have jurisdiction to determine the issues presented under section 280.

The second and principal issue involves the question of the primary tax liability of the Kentucky Production Co., the transferor. The petitioners say that no tax was or is due from the said company, whose assets they received, and that therefore there is no liability on their part as transferees. We think the contentions of the petitioners on this issue must be sustained.

The material facts are not in controversy. The amount of the net income of the Production Co., as determined by the respondent, is not disputed by the petitioners, nor do they question the correctness of the tax computation. The parties concede the facts relating to the organization of the Kentucky Oil Corporation and its acquisition of the assets of the Production Co., substantially as set out in our findings of fact, above. The petitioners also admit that Gover and Mrs. Lewis each received assets of the Production Co. in liquidation of their shares in excess of the liability asserted by the respondent, and that the Kentucky Oil Corporation assumed the liabilities of the Production Co. in connection with the purchase of its assets. The respondent admits the fact that the Production Co. was a common law trust, and this fact is clearly established by the declaration of trust under which the company was organized. The parties are in disagreement only on the question whether the Kentucky Production Co. was taxable for 1922 as an association at the rates applicable to corporations, or whether it was taxable as a trust, and if taxable as a trust, whether the tax is payable by the fiduciary or by the beneficiaries. On this point, the following retroactive provisions of the Revenue Act of 1928 apply:

Sec. 704. TAXABILITY OF TRUSTS AS CORPORATIONS—RETROACTIVE.

(a) If a taxpayer filed a return as a trust for any taxable year prior to the taxable year 1925 such taxpayer shall be taxable as a trust for such year and not as a corporation, if such taxpayer was considered to be taxable as a trust and not as a corporation either (1) under the regulations in force at the time the return was made or at the time of the termination of its existence, or (2) under any ruling of the Commissioner or any duly authorized officer of the Bureau of Internal Revenue applicable to any of such years, and interpretative of any provision of the Revenue Acts of 1918, 1921 or 1924, which had not been reversed or revoked prior to the time the return was made, or under any such ruling made after the return was filed which had not been reversed or revoked prior to the time of the termination of the taxpayer's existence.

The respondent contends that the above section of the statute is not applicable to these cases, first, because the fiduciary return of

income on Form 1041 filed by H. G. Lewis, as trustee for the Kentucky Production Co., was a fiduciary or information return and not a return of a "taxpayer."

This contention of the respondent appears not to be in harmony with the interpretation of section 704 (a), *supra*, set forth in Memorandum 4842 of the General Counsel, Bureau of Internal Revenue, published in Cumulative Bulletin VII–2, p. 103, July–December, 1928, where it is said:

An opinion has been requested regarding certain general legal issues raised by section 704, Revenue Act of 1928 * * *.

The issues here under consideration will be discussed seriatim.

1. Are trusts (by which no tax is payable as a result of the computation of their income under section 219, Revenue Act of 1924 or prior Revenue Act), not within the scope of section 704 (a), Revenue Act of 1928, merely by reason of the fact that no tax is payable by the trust upon any part of the trust income * * *?

It is contended that section 704 (a) refers to those trusts which may be taxable as trusts on Form 1040, and not to trusts the income of which is taxable to the beneficiaries.

This would seem to imply that only trusts whose trustees are * * * obligated to file Form 1040 returns, are by possibility within the purview of section 704 (a), Revenue Act, of 1928; and that trusts whose trustees are * * * obligated to file only Form 1041 returns are absolutely without the purview of section 704 (a), Revenue Act of 1928. It is not believed that this distinction is tenable. So far as the particular condition "if a taxpayer filed a return as a trust for any taxable year prior to the taxable year 1925" in section 704 (a) is concerned, it is satisfied by the filing by the trustee on behalf of a trust of a return "as a trust," and it is quite immaterial whether the form is 1040 or 1041, the distinction * * * between the two classes of returns being irrelevant for all purposes of section 704 (a), Revenue Act of 1928.

The view embodied in the above quoted extract from G. C. M. 4842 is, in our opinion, a correct construction of the statute. A contrary interpretation would result in the taxation, at rates applicable to corporations, of trusts all of whose income was distributable to the beneficiaries and which trusts, therefore, would not be subject to any tax under section 219, when trusts whose income was not distributable to beneficiaries would receive the benefit of section 704 (a) and would be taxable as trusts at rates applicable to individuals. Thus, a large class of trusts, peculiarly within the scope of the mischief which section 704 was plainly intended to remedy, would be denied the benefits of the relief provisions. Such reasoning inescapably leads to this contradictory and absurd result, manifestly not intended by Congress.

Section 704 is clearly broad enough to include trusts the income of which was distributable and thus not required to pay a tax, as well as trusts where the income or some of it was not distributable. Otherwise, a trust which was not required to pay a tax at all, under

rulings of the Commissioner in effect when the trustee filed a return as a distributable trust, would be taxable as a corporation, when if the income was not distributable it would be taxable as a trust.

In the instant case, the trustees took the position that the Production Co. was a trust, taxable only as such, and that since the net income was distributable to the unit holders or beneficiaries periodically, no tax was due from the trust estate. In these circumstances, the return in question was the only proper return which could have been made by the trustees consistently with their position. The return set forth all the information required, and there is no suggestion in the record of fraud or bad faith. It is our opinion, therefore, that the return filed by Lewis for the trust estate was the required return within the purview of section 704 (a), *supra.*

The next objection raised by the respondent is that the Kentucky Production Co. was not considered to be taxable as a trust within the meaning of section 704 (a), but that it was an association taxable as a corporation.

The declaration of trust, set forth in our findings of fact, discloses that the beneficiaries had no right of control over the property or business of the trust estate, and could not exercise control over the trustees, either by removal or by filling vacancies or otherwise. They could exercise no control over the trustees either directly or indirectly. Exclusive and complete control of the trust estate was vested in the trustees, as well as the power to appoint their successors, and the trustees did not, during the taxable period, own a majority of the shares of stock or beneficial interests in the trust.

These facts bring these proceedings squarely within the retroactive provisions of section 704 (a), *supra,* since, under the rulings of the Bureau of Internal Revenue in effect at the time of the termination of the existence of the Kentucky Production Co. and also at the time the return was made, it was considered to be taxable as a trust and not as a corporation. *E. A. Landreth et al.,* 15 B. T. A. 655; *Wilkens & Lange,* 15 B. T. A. 1183; *Woodrow Lee Trust,* 17 B. T. A. 109.

In the *Landreth* case, *supra,* we discussed at length the rulings of the Bureau applicable to the period involved in that case which was up to March 15, 1922, the date of the filing of the return. Up to and including the period involved in that case the Bureau of Internal Revenue was consistent in ruling that irrespective of whether the taxpayer was engaged in business in quasi corporate form, it was taxable as a trust where shareholders could not control the actions of the trustees.

The rulings of the Commissioner or his duly authorized officers in this respect were not changed until after July 10, 1924, the date of I. T. 2061. In G. C. M. 6417, promulgated with the approval

of the Commissioner and published in C. B. VIII–1, January–June, 1929, August 11, 1924, was set out as the date of the change of rulings of the Commissioner under and pursuant to the decision in the case of *Hecht* v. *Malley*, 265 U. S. 144. This is borne out by the published rulings. See S. M. 4104, C. B. IV–2; I. T. 2061; S. M. 5382, C. B. V–1 2685.

It seems clear from the foregoing that at the time the petitioner herein filed the return by a trustee as a trust, in November, 1923, under the rulings of the Commissioner it would have been properly taxable as a trust.

The division decision in *Lansdowne Realty Trust*, 20 B. T. A. 119, while containing language and reasoning contrary to the views here expressed, is not necessarily in conflict with the decision herein reached, for the reason that the years there involved were 1923, 1924, 1925, and 1926. For the years 1924, 1925, and 1926 that decision is clearly correct. For 1923 it is not disclosed when the return was filed. Without a knowledge as to the time the return was filed for 1923, we can not determine that the result reached in that decision is in conflict with the views here expressed. While the pleadings show that the returns were for calendar years, extensions may or may not have been granted. When the return was actually filed, not when it was due, is the determinative point, in so far as the return is concerned. Notwithstanding, therefore, the language of the *Lansdowne* case contrary to our views expressed herein, we can not say that the result there reached was incorrect.

Having reached the conclusion that the Kentucky Production Co. is taxable as a trust and not as a corporation, we come to the final question arising under this issue, namely, whether the income of the trust is taxable to the fiduciaries or to the beneficiaries. This point is governed by the Revenue Act of 1921, which provides in section 219 that the tax imposed upon individuals shall apply to the income of estates or of any kind of property held in trust, and in case the income is to be distributed to the beneficiaries periodically, whether or not at regular intervals, the tax shall not be paid by the fiduciaries, but there shall be included in computing the net income of each beneficiary that part of the income of the estate or trust for its taxable year, which, pursuant to the instrument or order governing the distribution, is distributable to such beneficiaries, whether distributed or not.

Under these provisions of the statute, if the income of the Kentucky Production Co. for the taxable period here involved was distributable to the beneficiaries, then no tax is payable by the fiduciaries or trust estate, but the income is taxable to the beneficiaries.

The declaration of trust, under which the Kentucky Production Co. was created and organized, provided in Article II, section 4, that—

the unit holders shall be entitled to demand and receive their proportionate part of the net profits arising from the conduct of the business of said Trust estate, which profits shall be from time to time determined and distributed by the Trustees at such stated periods as they may deem proper and advisable, after such profits are earned. The decision of the Trustees as to what constitutes capital and what constitutes income and profit shall be conclusive upon the unit holders. The unit holders shall have the further right, at the termination of this Trust however such termination may be brought about, to a division of the property of the Estate among the unit holders in proportion to the shares held by them, respectively, * * *

And Article I, section 4 (c), provided that the trustees should have power and authority, in conducting the business of said trust estate, to do the following, among other things:

(c) To accumulate money and property for the purposes of exploiting, drilling on and exploring lands which it may own or lease, containing or believed to contain oil or gas or other mineral deposits of any kind, and to carry on the business of searching and prospecting for same * * *

The provisions in the trust instrument as to distribution of income, the right of the trustees to determine what constitutes capital and what constitutes income and profit and the provision as to accumulation appear to be somewhat conflicting. It is our duty to construe the instrument as a whole in order to determine if possible the real intention of the parties. In doing so, if it is possible, we should reconcile the apparent conflicts.

The practical construction of the parties to the instrument, that is, what has actually been done pursuant thereto, is of great weight in determining the intention of the parties and the correct construction to be given to the instrument. But in this case we do not have the benefit of the practical construction of the parties prior to the taxable period and the taxable period itself consisted only of 40 days. The trust did not begin business until the month of May, 1922. From that period until September 30, 1922, which is the period immediately preceding the taxable period involved, the respondent determined that the trust had a net loss in excess of $13,000. The amount of income as determined by the Commissioner is not in controversy in this proceeding. The trust having a net loss for the preceding period, we can not construe the fact that no distribution was made as a practical interpretation of the parties that the income was to be accumulated. There was no income to distribute. This leaves us, then, with only the 40-day period involved in this proceeding, without the benefit of the practical construction of the parties as an aid in construing the instrument.

For the taxable period net income from operations of $4,822.89 and profit from sale of assets of $33,028.87 were reported in the trustee's return. The respondent added to the income the amount of $64,725.27 on account of the sale of capital assets.

The operating income for the taxable period, so far as we can determine it from the record, does not appear to have been sufficient to make good the capital deficit or the impairment of capital on account of the operating loss for the previous period. The trust not having had any income, but having suffered a net loss for the previous period, and actually doing business only since May, 1922, the $13,000 net loss for that period necessarily came out of capital paid in. We do not think that the trust was required to distribute income until a capital impairment had been made good, even considering that it was required absolutely to distribute all income. In any event, we do not think that a 40-day period is long enough to justify us in saying that, because income was not distributed in that period, it amounts to a construction of the parties that the income was to be accumulated. A periodic distribution does not necessarily mean distribution within a 40-day period.

Taking the whole instrument together, however, we think that it might fairly be interpreted as meaning that the profits arising from the conduct of the business or operating profits were not to be accumulated but were to be distributed, and that other profits, that is, from sale of capital assets, might be accumulated, but that such accumulation was only for the specific purpose set out in the instrument, that is, for exploiting, drilling or exploring lands and the carrying on of the business of searching and prospecting. For no other purpose could accumulation be made. We think that the whole instrument when read together is capable of no other construction. We think that the provision that the decision of the trustees as to what constituted capital and what constituted income and profits would be conclusive gives strength to this interpretation. If all income was to be treated alike this provision as to the discretion of the trustees in determining what was capital and what was income would have little if any effect. Apparently the object of this provision was to enable the trustees to accumulate what they considered capital and that the proceeds of the sale or other disposition of capital assets, although resulting in profits, might have been considered to retain their capital nature. Under this interpretation the instrument is considered as a harmonious whole and the apparent conflicts are reconciled. The return filed by the trustee set forth on its face that all of the income was distributable. This return, however, was not filed until after the trust had ceased business and had actually distributed the income as well as all assets in complete liquidation.

With respect to the income arising from the sale of assets, we think that under the terms of the instrument such income under the facts presented was not permitted to be accumulated, but was distributable, for the reason that the very act which gave rise to this income did away with all the purposes for which accumulation could be made. The trust had no assets. It had no property or lands on which it could drill or explore for oil or gas or mineral deposits and it could no longer carry on the business of searching and prospecting for oil and gas, the only purposes for which accumulation could be made. On the same day that it sold its assets, the trust was dissolved and the unit holders immediately thereon became entitled by express provision of the trust instrument to a division of all the property of the trust estate. It could accumulate money and property only for the purpose of exploiting and drilling and searching for oil and gas, and since on the day that it received the income all purposes of this kind were abandoned and liquidation begun, it could not be said that the money received was to be accumulated.

It is our conclusion, therefore, that the whole amount of the income here in question became distributable to the beneficiaries during the taxable period, pursuant to the provisions of the instrument governing the distribution. Hence, under section 219 of the statute, no tax is imposed upon the fiduciaries or trust estate, but the distributable shares of the net income are taxable to the beneficiaries.

There being no tax due from the said trust, the Kentucky Production Co., the petitioners have no liability, at law or in equity, as transferees of its assets, or otherwise.

This disposes of the proceedings and renders it unnecessary for us to consider other issues and contentions of the parties.

Reviewed by the Board.

*Judgment will be entered for the petitioners.*